(No. 38530.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
WILLIE CARTER, Appellant.

*Opinion filed January 19, 1968.*

Ward, J., took no part.

Gerald F. Munitz, of Chicago, appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, James B. Zagel, and Eldridge R. Hersey, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The defendant, Willie Carter, was tried in the circuit court of Cook County before a jury, found guilty of armed robbery, and sentenced to the penitentiary for a term of not less than eight nor more than fifteen years. He prosecutes this appeal to review his conviction.

Defendant contends that the trial judge committed reversible error in refusing to admit into evidence at the hearing on the motion to suppress testimony regarding the attendant circumstances surrounding the giving of defendant's confession; that the best-evidence rule was violated by the introduction into evidence of a multilith copy of de-

fendant's written confession; that the State erred in failing to produce the police stenographer who typed defendant's confession; that the trial judge failed to make an adequate finding with respect to the voluntariness of defendant's confession; that the decision of the trial judge denying defendant's motion to suppress the confession was manifestly against the weight of the evidence; and finally that improper comments upon the evidence were made by the State during summation.

On September 16, 1961, at approximately 12 o'clock noon Peter Vaca was robbed at gun point in a Chicago alley while making his daily rounds as a milkman. On October 11, 1961, the defendant was arrested in Chicago at 3:30 P.M. while riding in his automobile. He was taken to the Maxwell Street Police Station where he was questioned by police officers with regard to the Vaca robbery. During this questioning period, the defendant denied involvement in the crime. Defendant was then taken to Central Detention of the Chicago Police Department, and on October 12, 1961, appeared at several line-ups. Sometime in the afternoon of October 12 Peter Vaca observed the defendant in a line-up and identified him as the man who had robbed him on September 16. About 8:00 P.M. on October 12 defendant was returned to the Maxwell Street Police Station and at 11:30 P.M. signed a confession admitting that he had robbed Vaca. At the time the defendant signed the confession he was 20 years of age and, although able to sign his name, was unable to read.

Upon his arraignment the defendant was supplied with a copy of the two-page confession alleged to have been given by him on October 12. A verified petition to suppress was subsequently filed in advance of trial in which the defendant alleged that the statements given by him were the result of duress, violence and threats and thus were not voluntary. At the hearing on the petition the defendant testified that he was questioned at the Maxwell

Street Station for approximately 5½ hours on the night of October 11. He was then taken to Central Detention where he remained until the following day. The defendant was then returned to the Maxwell Street Station where he was handcuffed to a chair, and struck several times by one of the police officers. Although he complained of being hungry, defendant testified that the officers told him he would be given no food until he had made a statement. He further testified that he had not been given a place to sleep at Central Detention, but rather was forced to sit up on a bench the entire night. He was given nothing to eat on the day of the 12th until the time he gave a statement at 11:30 P.M.

Four police officers and Vaca testified on behalf of the State, and denied defendant's charges of threats and brutality.

Defendant first contends that the trial judge committed reversible error at the hearing on the motion to suppress by sustaining an objection to a question regarding circumstances surrounding the confession. On cross-examination defendant's counsel asked Officer Parks, the interrogating officer, whether he had advised the defendant of his constitutional right not to make a statement. An objection to this question was sustained; however, the trial court permitted defendant to establish that he had not been advised of his right to counsel.

Subsequent to the trial in this case the court in *People v. Hartgraves,* 31 Ill.2d 375, 379, interpreted *Haynes* v. *State of Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336, as determining that the failure to advise a defendant of his right to remain silent is an attendant circumstance which the accused is entitled to have considered in determining the admissibility of a confession. However, the failure to do so did not require the rejection of a confession or create a question of constitutional dimension until the decisions in *Escobedo* v. *Illinois,* 378 U.S. 478, 12

L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant concedes that the rules laid down in *Escobedo* and *Miranda* are not applicable to his trial which predated those decisions (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772) but argues, on the basis of *Haynes,* that the trial court erred in failing even to consider evidence of the failure to advise of the right to remain silent.

We agree that the inquiry was relevant and should have been considered on the motion to suppress, but for several reasons we do not believe that the failure to do so in this case prejudiced the defendant or constituted reversible error.

In *Haynes,* the defendant had argued that his confession was involuntary because the police had kept him *incommunicado* for a 16-hour period between the time of his arrest and the signing of the confession. He charged that all requests to the police that he be allowed to call his wife and attorney were refused until he admitted participation in the robbery for which he was being interrogated. These charges of the defendant were not, as the Supreme Court found, contradicted by the evidence of the State, and the court consequently held that the interrogation procedure violated the defendant's right to due process.

The court went on in *Haynes,* however, to find that the trial court erred in instructing the jury, in effect, "not to consider as relevant on the issue of voluntariness of the confession the fact that a defendant is not reminded that he is under arrest, that he is not cautioned that he may remain silent, that he is not warned that his answers may be used against him, or that he is not advised that he is entitled to counsel." *Haynes* v. *State of Washington,* 373 U.S. 503, 516, 10 L. Ed. 2d 513, 522.

The thrust of defendant's argument here, in his motion to suppress and in his testimony at both the preliminary hearing and at his jury trial, was that his confession was

coerced by threats and physical brutality. At no time did he suggest that he was influenced by an ignorance of his rights and the trial judge did consider that he was not advised of his right to counsel.

At no time during his jury trial did defendant attempt to introduce evidence of the failure to advise him of his right to remain silent. If the testimony of defendant were believed, the confession would be inadmissible despite any amount of warning regarding his constitutional rights. Both the trial judge and the jury chose to believe the evidence of the State rather than the defendant. We cannot conceive that the failure of the trial judge to admit such evidence before him could have influenced his finding that the confession was admissible. Since the failure to advise a defendant of his right to remain silent did not compel rejection of confession at that time (*People* v. *Davis,* 10 Ill.2d 430,) we feel that the trial judge's ruling did not prejudice defendant and does not require reversal.

The defendant next charges that the State violated the best-evidence rule when it introduced into evidence, over objection, a multilith copy of his confession. It appears from the record that the confession was typed by a stenographer and was signed by the defendant. Copies of the confession were then made from the original by an offset duplicating process, and it was one of these copies which was introduced into evidence by the State. Upon demand by defense counsel that the original be produced, the State's Attorney explained to the court that the original was destroyed after the copies from it had been made. The original, according to the State, does "not hold up very long, it is not kept."

"Where the destruction or loss of an original document is claimed, the circumstances should be shown, so as to rebut any inference of fraudulent design by the party seeking to introduce a copy or parol evidence or, to show that the original was not initially concealed, destroyed or

disposed of for the purpose of introducing a copy." (4 Callaghan's Evidence 186, sec. 6.19.) In view of the circumstances and the explanation offered by the State, we are of the opinion that the absence of the original confession was adequately explained and that sufficient foundation was laid for the introduction of the multilith copy.

Defendant's third contention is that the State's failure to produce the stenographer who typed the confession constituted reversible error. The stenographer was apparently present during the entire examination of the defendant which resulted in his confession and the defendant argues that she was therefore a material witness. In *People* v. *Harper,* 36 Ill.2d 398, 400, we stated: "It is well established in Illinois that when the voluntary nature of a confession is brought in question by a motion to suppress, it is the duty of the State to produce all material witnesses connected with the taking of the statements or explain their absence." Even if we are to assume, as the defendant insists, that the stenographer was a material witness, we are of the opinion that her absence was adequately explained when one of the examining police officers testified, over objection, that "in checking" he learned that she had moved to Missouri. In view of this explanation, therefore, we conclude that the stenographer's absence did not constitute reversible error.

At the conclusion of the hearing on defendant's motion to suppress, the trial court announced its decision as follows: "The motion to suppress the confession will be denied." Relying on *Sims* v. *Georgia,* 385 U.S. 538, 17 L. Ed. 2d 593, 87 S. Ct. 639, the defendant assigns as error the failure of the trial judge to make a specific finding that the confession was voluntary. We certainly have no quarrel with that statement of the United States Supreme Court in *Sims* cited by the defendant: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." (*Sims* v.

*Georgia,* 385 U.S. 538, 17 L. Ed. 2d 593, 598, 87 S. Ct. 639.) This statement, however, must be viewed in light of the circumstances surrounding the case. *Sims* involved the application of the rule laid down in *Jackson* v. *Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, which provided that the trial court judge must make an initial judicial determination as to whether or not a statement was made voluntarily before it is allowed to be read to the jury. The trial court in *Sims,* however, failed to apply this rule and directed the jury to determine whether or not the confession was voluntary. Here a separate preliminary hearing on the admissibility of the confession was made outside of the presence of the jury. This practice, existing in Illinois courts even prior to *Jackson,* was for the sole purpose of determining whether or not the confession was voluntary, and the denial of the defendant's motion to suppress constituted a sufficient finding that the confession was voluntary.

The defendant next contends that the order denying the motion to suppress is against the manifest weight of the evidence. We have consistently held that the question of the competency of a confession is for the trial court alone to decide, and that the court is not required to be convinced of its voluntary character beyond a reasonable doubt when making its decision. (*People* v. *Sims,* 21 Ill.2d 425 ; *People* v. *Miller,* 13 Ill.2d 84.) We shall not disturb that ruling unless we find the decision of the trial court to be manifestly against the weight of the evidence.

An examination of the record shows that the testimony of the defendant relating to threats and violence was controverted by the State's witnesses. The fact that the defendant was held in custody, without being taken before a magistrate until he confessed some 32 hours after his arrest, does not *per se* void his confession. Although the statute in force at the time of the defendant's interrogation

(Ill. Rev. Stat. 1961, chap. 38, par. 660) required that the defendant be taken before a magistrate "without unnecessary delay", "noncompliance therewith does not necessarily obviate a conviction nor render an otherwise voluntary confession inadmissible at the trial." (*People* v. *Taylor,* 33 Ill.2d 417, 422.) The fact that a delay existed is only another factor to be considered by the trial judge on the question of voluntariness of the confession. *People* v. *Hall,* 413 Ill. 615.

The *McNabb-Mallory* rule (*McNabb* v. *United States,* 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608; *Mallory* v. *United States,* 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356), which holds that confessions are *per se* inadmissible if obtained during illegal detention, has never been adopted in Illinois. (See *People* v. *Kees,* 32 Ill.2d 299.) We also note that, even though the defendant was apparently not advised of his right to an attorney, no request for counsel had ever been made by him prior to his interrogation. In *People* v. *McGuire,* 35 Ill.2d 219, we held that the rule to be applied in those cases decided prior to the effective dates of *Miranda* and *Escobedo* is that where defendant made no request for counsel prior to interrogation there was no violation of defendant's right to counsel. We have carefully reviewed the other points raised by the defendant relating to this issue and it is our conclusion that the decision of the trial court on the admissibility of the confession was not against the manifest weight of the evidence.

Defendant's final ground for reversal concerns alleged improper comments upon the evidence made during the State's closing argument. No objection to the argument now complained of was made in the trial court, however, and irregularities now complained of must be deemed to be waived unless they are so seriously prejudicial as to deprive defendant of a fair trial. We have examined the entire argument and do not find that the remarks objected to are

of such character. *People* v. *Donald,* 29 Ill.2d 283; *People* v. *Allen,* 413 Ill. 69.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.