(No. 40311.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ALONZO TAYLOR, Appellant.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

Ward, J., took no part.

Malcolm S. Kamin, of Chicago, appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and Sheldon M. Schapiro, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Kluczynski delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant, Alonzo Taylor, was convicted of rape and sentenced to imprisonment for a term of 45 years. He appealed directly to this court, questioning, *inter alia,* the propriety of the trial court's admission of allegedly coerced confessions. Because that court, despite defendant's timely objection, had not conducted a separate hearing on the voluntariness of these confessions, one oral and the other written, we remanded the cause for the sole purpose of holding such a hearing. If the confessions were found to be inadmissible, we directed the court to vacate the judgment and award a new trial, or, if admissible, to enter a new judgment of conviction. *People* v. *Taylor,* 33 Ill.2d 417, 425.

Pursuant to this order, the trial court conducted a full

hearing, determining that the confessions were voluntary and entering a new judgment of conviction. Defendant now appeals, challenging this finding of voluntariness on the basis of the evidence adduced, the State's failure to account for all material witnesses to his written confession and to produce that confession, and the trial court's consideration of the transcript of his prior trial. He also challenges the entire procedure of conducting a post-trial hearing on voluntariness charging that it denies him due process of law.

Defendant, age 35, was arrested at about 9:30 A.M. on Saturday, December 26, 1959. It is undisputed that he had a fourth grade education, that prior to any interrogation he was not informed of his rights to counsel and to remain silent and that he was not taken before a magistrate until 72 hours after his arrest, contrary to the provisions of section 7 of division VI of the Criminal Code then in effect. (Ill. Rev. Stat. 1959, chap. 38, par. 660.) Defendant testified that the complaining witness identified him in his cell about an hour and a half after his arrest and that he denied raping her. Subsequent to this identification he was taken to a room and questioned by officers McCarthy, Geimer, and Kobar in the presence of seven or eight other officers. He stated that when he refused to admit his guilt Geimer struck him "upside the head" and Kobar hit him in the mouth, causing his lip to bleed and jaw to swell. The force of these blows knocked him to the floor and the officers kicked him in the side several times. He was then returned to his cell, following a brief conversation with his brother, two friends and an unnamed police officer concerning the ownership of a toy gun found on his person.

Defendant was kept in his cell until the following Monday morning where, he stated, he was visited intermittently by officers McCarthy and Geimer who advised him to confess to the State's Attorney or else "he would get another whipping". Other officers whose names he did

not know looked in on him out of curiosity to see the person who raped an eighty-year-old woman. On Monday morning he was taken to the State's Attorney's office at 26th and California Avenue where he signed a statement, in the presence of assistant State's Attorney Donigan, the complaining witness, Officer Geimer, Lena Woodson, and a man whom Geimer referred to as Klauses, only after being threatened by Geimer with another whipping. He stated that he had proclaimed his innocence throughout his interrogation and had complained to the nurse at the county jail about his cut lip and swollen jaw.

Officers Geimer, Kobar and McCarthy testified that they interrogated defendant shortly after his identification by the complaining witness and that at this time, approximately two hours after his arrest, he orally confessed to the rape. Each specifically denied making threats or using physical force against defendant at any time between his arrest and the written statement given some fifty hours thereafter. They also explained that defendant was not taken before a magistrate because the departmental practice at that time was to take accused sex offenders to the State's Attorney's office to be charged prior to going to court. Assistant State's Attorney Donigan testified that defendant signed a statement in the presence of himself, the complaining witness, Officer Geimer and Lena Woodson, and that at no time were any threats made to defendant. While at the original trial he had indicated that an officer "Klauses" was also present, he now said he wasn't sure if such an individual had been present. Neither the complaining witness, who had died, nor Lena Woodson testified at the remand hearing, but a transcript of their testimony at the trial was considered by the court for the purpose of determining if it contained evidence of involuntariness on the part of defendant. Testimony was received demonstrating the unavailability of Lena Woodson. Officer Martin of the police department personnel unit also testified that he

had examined employee records back to the year 1940 and had found no record of an officer who spelled his name "Klauses" or "Klausis". In addition, two officers named "Klausen" testified that they had never seen or heard of defendant. Finally, the head nurse at the county jail, to whom defendant allegedly complained, stated that she did not remember defendant telling her he had been beaten and that if he had, she would have reported it. The doctor who gave defendant a general physical examination upon his admittance to the county jail, December 29, 1959, said that he did not notice any bruises on defendant and had he noticed even a slight bruise, he would have made a record of it.

The question of voluntariness is for the trial court to determine "and its determination depends not upon any one factor, but on the totality of all the relevant circumstances." (*People* v. *Hudson,* 38 Ill.2d 616, 619.) The trial court is not required to be convinced of the voluntary character of a confession beyond a reasonable doubt (*People* v. *Carter,* 39 Ill.2d 31, 38; *People* v. *Sims,* 21 Ill.2d 425), and its decision will not be disturbed unless it is manifestly against the weight of the evidence.

In the instant case, the testimony of the defendant relating to threats and physical abuse was controverted by the State's witnesses. His claims of physical injuries were not corroborated, although several persons observed him after the alleged injuries occurred, and, moreover, were rebutted by a physician who examined him and the nurse to whom he allegedly made complaint. It is true that defendant was not advised of his rights to counsel and to remain silent but "Because the standards laid down in *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were not applicable at the time of defendant's statements (*People* v. *McGuire,* 35 Ill.2d 219), these factors were merely significant attendant

circumstances for the court to consider in ruling on the competency of his confessions. *Haynes* v. *State of Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336." (*People* v. *Hudson,* at 622.) Similarly, as noted in our prior opinion in this cause (33 Ill.2d at 417), the fact that defendant was held in custody over the weekend and not brought before a magistrate until some 72 hours after his arrest, in contravention of the command of the applicable statute (Ill. Rev. Stat. 1959, chap. 38, par. 660), does not *per se* render his confessions inadmissible but is another factor to be considered on the question of the voluntariness of these confessions. (*People* v. *Hall,* 413 Ill. 615, 624.) From a careful examination of the entire record, it is our opinion that the trial court's finding of voluntariness is not against the manifest weight of the evidence.

We next consider certain errors alleged to have been committed at the remand hearing which defendant asserts call for exclusion of the confessions. With regard to his charge that the State failed to produce all material witnesses to his written confession, the evidence shows that the State adequately accounted for the absence of the prosecutrix and Lena Woodson, who undeniably were material witnesses, and of officer "Klauses" who allegedly was a material witness. Both the prosecutrix and Lena Woodson were shown to be unavailable, the former by virtue of her death and the latter by reason of the fact that despite good faith efforts she could not be located. While conflicting testimony was given as to whether an officer named "Klauses" was present when defendant signed his statement, the preponderance of the evidence indicates that no such officer was present. We therefore hold that the State discharged its burden of producing all the material witnesses to defendant's confession.

We also hold that the State's failure to introduce the original confession was not error. Neither the State nor the public defender's office, which represented defendant

at trial, could produce the original confession even though the record attests to a diligent search for it. Furthermore, the defense conceded that the State was cooperative in trying to find the original. In view of the unavailability of the original, the court reporter's copy of the confession was the best evidence of that statement and was therefore properly admissible. See *People* v. *Carter,* 39 Ill.2d 31.

Defendant next charges that the trial court's consideration of the transcript of his trial denied him the right to confront witnesses against him. This charge is grounded on the trial court's reading of the testimony given at trial by witnesses who were unavailable at the hearing. It is clear that this action did not prejudice defendant since the trial court, as it expressly stated, examined the trial testimony for the limited purpose of determining if there was any evidence to indicate that the confessions were involuntary. There is no substance to defendant's contention that the trial court departed from this purpose and considered evidence of guilt on the issue of voluntariness.

Finally, it is argued that the entire procedure of conducting a post-trial hearing on voluntariness denied defendant due process of law. In essence, this contention is bottomed on the defendant's inability to use statements made by witnesses at the hearing to impeach their testimony at trial, as would be the case where the hearing is held prior to trial. The potential prejudice to defendant due to this inability is, of course, mere conjecture and not sufficient in itself to find a denial of due process. Furthermore, while defendant asserts that *Jackson* v. *Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, which authorized post-trial hearings on voluntariness, did not comment on the constitutionality of such hearings, we find language in that opinion which refutes that contention. In *Jackson,* the State law provided that the jury determine any disputed fact issues related to voluntariness as well as the ultimate issue of guilt and innocence. In directing that the State

court conduct a separate voluntariness hearing on remand, the Supreme Court said at p. 394: "* * * if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession, but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so." For the identical reason, under the circumstances of this case we find no denial of due process.

For the foregoing reasons, the new judgment entered by the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.