THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALLEN MEDLEY, Defendant-Appellant.
Fourth District   No. 4—82—0043

Opinion filed January 6, 1983.

446

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, and John W. Wray, law student, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and Denise M. Paul, both of State's Attorney's Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

The facts in this case are singularly odious and repulsive.

Four acts of rape, two anal assaults, and four acts of fellatio—all committed on a young housewife by two home invaders.

A jury found Medley guilty of rape, home invasion, and burglary, and he received concurrent sentences of 45-45-7 years.

We affirm.

In the early hours of a hot June morning, a husband, his wife, their infant son and nine-year-old niece were asleep in their home in Springfield. The husband was awakened by the sound of the screen door opening. When he went to investigate, he saw a man standing over his niece who was asleep on the front room couch. The husband yelled and turned to run for the kitchen. A second man intercepted him, placed a gun to his head and ordered him to be quiet. In all, there were three intruders in the victims' home—two men and a woman. (During the remainder of the events described herein, the female intruder stayed in the front room of the home, watching over the niece.)

The second man then forced the husband into the bathroom and threatened his life and those of his family if he attempted to escape. During this time, the wife came out of the bedroom to investigate the commotion. The first man forced her back into the bedroom, ordered

her to undress, and raped her. While the rape was taking place, the couple's three-month-old son, who was asleep on the bed, began to cry. The intruder ordered the wife to quiet the baby so she began to nurse her son.

The two men then took turns raping the wife and ransacking the home. The wife was raped four times, assaulted anally twice, and forced to perform four acts of fellatio. During these attacks, the wife was nursing her infant son in an attempt to keep him quiet. When the intruders were finished, they tied and gagged the victims and then fled with the couple's car, credit cards, and several items of personal property. Four days later, Medley confessed to being one of the intruders. A jury convicted him of rape, home invasion, and burglary.

We affirm.

## I

Medley argues that the prosecution and the trial judge committed several errors which require reversal of his conviction. He argues first that his confession should not have been admitted into evidence because it was the product of an illegal detention, and contends that his detention was illegal because the police failed to take him before a judge without unnecessary delay. We disagree. Medley was not illegally detained. While he was being questioned concerning an unrelated shooting incident, the police received information that he was involved in the present crimes. When confronted with this information, Medley confessed and then led the police to the house where the stolen goods were located. All of this took place during a period of legal detention.

▉▉ ▉ Even if Medley had been illegally detained, it would not have been error to admit his confession. Failure to bring a defendant before a judge without unnecessary delay will not render a confession *per se* invalid. (*People v. Zepeda* (1970), 47 Ill. 2d 23, 265 N.E.2d 647.) In Illinois, courts determine the admissibility of a confession by deciding whether or not it was given voluntarily. (*People v. Dees* (1981), 85 Ill. 2d 233, 422 N.E.2d 616.) Unnecessary delay is only one of the factors which the courts consider. (*People v. Taylor* (1968), 40 Ill. 2d 569, 241 N.E.2d 409.) It is clear from the record that Medley gave his confession voluntarily and thus it was not error to admit it into evidence.

## II

▉ Next, Medley argues that it was error for the trial judge to require him to appear before the jury clad in jail clothing. In *People v. Wilkes* (1982), 108 Ill. App. 3d 460, 438 N.E.2d 1385, this court held

that it was error to force a defendant to appear before the jury while dressed in jail clothing. In that case, the defendant was forced to appear before the jury dressed in bright orange coveralls with the word "jail" stenciled across the back. The situation in the case before us is not nearly as egregious. The jail clothing which Medley wore was pale green and consisted of a pair of pants and a pullover shirt similar to that worn by surgeons. Furthermore, Medley had ample opportunity to obtain civilian clothing before his trial. Instead, he waited until the moment before the trial was to begin and then requested a continuance so that he could obtain other clothing. Such behavior cannot be condoned. The wheels of justice grind slowly enough without allowing defendants to use this type of delaying tactic. We find that it was not error for the trial judge to require Medley to appear briefly before the jury while he was dressed in routine jail clothing.

■ Even if it was error, it would be harmless error. In *Wilkes*, we adopted a three-pronged approach to determine whether forcing a defendant to wear identifiable jail clothing constituted harmless error. In order to find whether the error was harmless, we first focus on the error and decide whether or not it contributed to the conviction. Second, we determine whether the evidence supporting the conviction is overwhelming. Finally, we decide whether the error merely duplicates other properly admitted evidence. Forcing Medley to appear before the jury in jail clothing would have been harmless error under all three aspects. It is doubtful that such an error contributed to his conviction because the evidence supporting his conviction was overwhelming and because Medley, during direct examination, informed the jury that he was in custody at the jail. Hence, any information conveyed to the jury by his jail clothing would have been merely duplicitous.

### III

Medley also argues that *five* of the remarks made by the prosecution during the trial constituted reversible error.

We disagree.

■ *First*, Medley argues that it was reversible error for the prosecution to state during its closing argument that Medley's confession met all of the necessary legal requirements. The prosecution's statement was not error. During his direct examination, Medley raised several issues concerning the legal sufficiency of his confession. The prosecution was merely commenting on those issues. Furthermore, the policy behind not allowing either side to argue the legality of a confession to a jury is to prevent the jury from confusing the confession's

legal credibility with its factual credibility. (See *People v. Monroe* (1981), 95 Ill. App. 3d 807, 420 N.E.2d 544; *People v. Carter* (1979), 73 Ill. App. 3d 406, 392 N.E.2d 188.) In the case before us, the prosecution explicitly told the jury several times that it was their duty to consider all of the evidence and to determine for themselves the weight that should be given to the confession. The prosecution made it very clear that the issue of the factual credibility of the confession was to be resolved by the jury. Therefore, the prosecution's remarks concerning the legality of the confession did not prejudice the jury against Medley by forcing them to accept the factual credibility of his confession.

■ *Second,* Medley contends that it was error for the prosecution to state that it believed Medley had confessed to the crimes. Medley told the prosecution during cross-examination that it was asking the wrong person about the confession and the prosecution retorted that it believed it was asking the right person. The prosecutor's statement was harmless error. It was needlessly argumentative for the prosecution to infer that Medley had indeed made the confession. That statement, however, did not deprive Medley of a fair trial. Improper remarks by the prosecution do not require reversal unless they result in substantial prejudice to the accused. (*People v. Strange* (1980), 81 Ill. App. 3d 81, 400 N.E.2d 1066.) A conviction will not be reversed simply because the prosecution has committed error. It must first be determined that the defendant was denied real justice and that the verdict was the result of the error. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629; *People v. Reynolds* (1980), 85 Ill. App. 3d 549, 407 N.E.2d 64.) It is clear that Medley was not denied real justice by the remark and that it was the overwhelming evidence against him—not the remark—that resulted in his conviction.

■ *Third,* Medley urges that it was error for the prosecution, during closing argument, to mention that Medley had failed to call "Mr. Jimmy Slim" as a witness. The prosecutor's statement was not error. Instead, it was a fair comment invited by Medley's testimony that he had purchased the goods stolen from the victims' home from Mr. Jimmy Slim. Where a witness is far more accessible to the defendant than to the prosecution, it is proper for the prosecution to comment on the defendant's failure to call the witness. (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 382 N.E.2d 1300.) All that the prosecution knew about Mr. Jimmy Slim was his supposed alias, the fact that he drove a green Cadillac, and that he sometimes visited the housing projects in Springfield. Medley, on the other hand, testified that he had seen Mr. Jimmy Slim in the projects on several occasions

and that he had even had business dealings with him. Therefore, because the witness was clearly far more accessible to Medley than to the prosecution, it was not error for the prosecution to comment on Medley's failure to call the witness.

■ *Fourth*, Medley argues that it was error for the prosecution to state that one of the witnesses testifying against Medley testified at great risk to herself. Medley alleges that the prosecution was making inferences to the jury that Medley would retaliate against the witness. We, however, believe that the prosecution's remarks were ambiguous and subject to at least one other reasonable interpretation. Earlier in the trial, Medley's counsel elicited testimony from the same witness that she had never been prosecuted for using the victims' credit cards which she had obtained from Medley. The prosecution's statement could just as easily be interpreted as referring to the threat of prosecution raised by defense counsel as to the threat of retaliation by Medley. *Ergo*, we find no error.

■ *Fifth*, Medley contends that it was error for the prosecution to state during its closing argument that Medley was seen in possession of the stolen goods four hours after the home invasion. This statement was not error. The prosecution was simply restating testimony that had already been admitted into evidence.

Furthermore, Medley has waived any errors concerning the second, third, and fifth statements because he failed to raise them in a post-trial motion. *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040.

■ Medley also alleges that the cumulative effect of the above statements deprived him of a fair trial. We found that only one of the statements was error—and harmless at that. Medley's counsel admitted during oral argument that this court would have to find more than one of the statements constituted error in order to find reversible cumulative error. We agree. The doctrine of cumulative error cannot be applied when there is only one error. Therefore, the issue of cumulative error in this case is moot.

## IV

■ Finally, Medley asserts that the trial court erred by permitting the jury to examine a certified copy of Medley's prior conviction for armed robbery because the conviction contained information about the sentence Medley received for that crime. Medley argues that the information about the sentence was collateral and that its probative value was outweighed by its prejudicial effect on the jury. We disagree. An authenticated copy of the conviction is the proper way to

introduce evidence of a prior conviction. (*People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382.) To establish the conviction, the certified copy must show the judgment. (*People v. Lane* (1948), 400 Ill. 170, 79 N.E.2d 65.) The final judgment in a criminal case is not the *verdict*, but instead it is the *sentence*. (*People v. Warship* (1974), 59 Ill. 2d 125, 319 N.E.2d 507.) Therefore, the trial judge did not err by allowing the jury to see a certified copy of Medley's conviction which included his sentence.

In sum, there were no errors committed in this case which would require the reversal of Medley's conviction.

Affirmed.

TRAPP and GREEN, JJ., concur.