THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ISSAC JOHNSON, Defendant-Appellant.

First District (2nd Division)   No. 82—1370

Opinion filed March 13, 1984.—Rehearing denied April 10, 1984.

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, Issac Johnson, defendant, was found guilty of unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3) and murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1). He was sentenced to an extended six-year term for unlawful restraint and an extended 80-year term for murder, the sentences to run concurrently.

Defendant appeals, presenting the following issues for review: (1) whether the trial court erred in ordering defendant to remain present during jury selection; (2) whether the prosecutor's comments to the jury during closing argument were improper; and (3) whether a proper foundation was laid for the admission of tape recordings of conversations made between defendant and police.

For the reasons hereinafter set forth, we affirm.

On the first day of trial, prior to the selection of a jury, defense counsel advised the trial court that defendant wished not to be present at *voir dire* because he considered himself to be improperly attired. The State argued that the defendant could not waive his right to be present. The trial court upheld the position of the State and ordered defendant to remain while the jury selection process proceeded. On all five subsequent days of trial the defendant wore appropriate clothing.

At trial, Dr. Stein, Chief Medical Examiner of Cook County, testified that his autopsy of the deceased showed the cause of death to be asphyxiation due to manual strangulation.

Luis Ortiz, who resides in the front building at 3338 North Southport, in Chicago (the murder occurred in the rear building at 3338 North Southport), testified: on July 15, 1981, the day of the murder, the defendant knocked on Ortiz' door to inquire whether the Jackson family (defendant's "wife"[1] and "children") resided there. He

---

[1]In defense counsel's brief Juanita Jackson is referred to as defendant's "wife." In the State's brief, Juanita Jackson is referred to interchangeably as his "wife" or "ex-wife."

told defendant that the Jackson family did not live there. At a lineup held on July 18, 1981, Ortiz identified defendant as the man who came to his door.

Officer Prunicki, a dispatcher for the communications center of the Chicago police department, testified: on July 17, 1981, at approximately 6:28 p.m., he received a "911" call from a male caller who identified himself as Frank Coban and told him to send "a police over to 3338 North Southport" because "a girl had been murdered over there, they got her down in the basement."

Police officer Nelson, also a dispatcher for the communications center, testified: on July 17, 1981, at approximately 10:28 p.m., he received a "911" call from an unidentified male caller who told him to "send a police car to 3338 North Southport. The back, rear. This girl named Juanita Jackson murdered a white girl there."

Officers Prunicki and Nelson took no action in response to these calls.

Sergeant O'Connor testified: on July 18, 1981, at approximately 7:45 a.m., while on duty at Area 6 Police Headquarters, he received a call from a male caller who identified himself as Willie Lee. The caller stated "he was wanting to inform the police department of a dead body at 3338 North Southport." Sergeant O'Connor and other officers proceeded to the rear building at 3338 North Southport where Juanita Jackson (defendant's "wife") and Renaldo Rounds resided. They were cooperative in permitting the officers to search the apartment. The police found the body of 15-year-old Christine Jordan in a large box in the basement.

Wesley Calhoun, a friend of the deceased, testified: on July 15, 1981, while visiting a friend at 3316 North Southport, several doors from the Jackson apartment, he saw defendant talking with Christine Jordan on the street. At the lineup held on July 18, 1981, he identified the defendant as the man he saw talking with Christine Jordan.

Juanita Jackson testified: she knew defendant for two-three years, at one time had lived with defendant and had a child as a result of that relationship.[2] She notified the police that while cleaning her attic on July 27, 1981, 12 days after the murder, she found books and papers belonging to Christine Jordan. She listened to the "911" tape containing the calls received by Officers Prunicki and Nelson and identified the voice of the male caller on the "911" tape as that of defendant.

---

[2]At no time did Ms. Jackson testify that she was defendant's "ex-wife" or had more than one child with him.

Officer Patterson, a latent print examiner who examined the books and papers found in Juanita Jackson's attic, testified that one of the fingerprints taken off the books matched that of the defendant.

The State introduced defendant's oral confession taken by Detective Kajari on July 18, 1981, following the lineup. Kajari testified to the following: defendant told him that he went to visit his "wife," Juanita Jackson, on July 15, 1981, the day of the murder, in hopes of "getting back together" or to get his "children" back from her. Since there was no one in the Jackson apartment, he broke through a window and entered the apartment. Later that afternoon at approximately 4 p.m., he left to get a can of "pop" and met Christine Jordan on the street. He told her someone in the apartment wanted to speak with her and she went there with him. According to Kajari, defendant stated that inside the apartment he attempted to have intercourse with Ms. Jordan. She tried to fight off his efforts, and to prevent her from screaming, he strangled her.

Marie Whitehead, the landlady at 3338 North Southport, testified: on July 15, 1981, at approximately 5 p.m., she saw defendant coming down the stairs of the rear apartment at 3338 North Southport. She identified defendant in the lineup held at police headquarters as the man she saw coming down the stairs.

John Rimicci, an electronic maintenance technician employed by the Chicago police department, testified for the State regarding the recording process used when "911" emergency calls are received. Rimicci testified that during July 1981, the tape machines were in good working order and that a malfunction in a recorder would be immediately noticed by the user.

John Bittenbinder, a violent-crimes investigator for the Chicago police department, testified: on July 18, 1981, he went to the communications section of the Chicago police department and obtained tapes from the previous day's "911" recordings. He then made a copy of the two "911" calls received by Officers Prunicki and Nelson.

Defense counsel objected to the introduction of the "911" tapes on the grounds that a proper foundation had not been laid. The State argued that a foundation had in fact been laid because the entire tape was not being offered; only the tape recordings of conversations between Officers Prunicki and Nelson and defendant were being offered into evidence, and these conversations had previously been authenticated in court by Officers Prunicki and Nelson.

The trial court agreed that the testimony of Officers Prunicki and Nelson laid a foundation for the admission of the tapes. The tape recordings of the "911" conversations made between defendant and po-

lice were admitted into evidence and played for the jury.

Defendant did not testify nor did the defense call any witnesses.

During closing argument, defense counsel objected to the State's reading of excerpts written by the victim in one of her books. Defendant's objection was overruled. Defense counsel also objected to the State's vouching for the credibility of State's witnesses and to the prosecutor's expression of her opinion that defendant was guilty. These objections were sustained and the jury was instructed to disregard the prosecutor's statements.

Based on the foregoing evidence, the trial court found defendant guilty of unlawful restraint and murder.

Defendant filed a timely notice of appeal.

I

■ Defendant initially contends that the trial court erred in compelling his presence at *voir dire* on the first day of trial. Defendant alleges that appearing in wrinkled, dirty clothes eroded his right to a presumption of innocence.

Prior to jury selection, the following exchange took place:

"[Defense]: We would like to have the defendant excused for today.

[Court]: Bring him out.

(Discussion was had off the record.)

[Court]: He has on a pair of maroon colored trousers, long trousers. He's got shoes on and he has a red and black long sleeve shirt. He doesn't have a belt.

[Defense]: Do you want to be out here when the jury comes out today or do you want to wait until tomorrow?

[Defendant]: That would be more better.

[Defense]: He can waive his appearance.

[Court]: Do you have a case on that?

[Defense]: I can cite cases in this building where the defendants didn't come out for trial.

[Court]: Cook County law?

[Defense]: The FALN is the first case that comes to mind. They stayed in the back. They didn't want to be there.

[State]: He is picking and choosing. He doesn't want to be here today but he wants to be here tomorrow.

[Court]: I want him here. You can make that a matter of record.

[Defense]: I believe it is of record. We are objecting.

\* \* \*

[Defense]: I just think it would be better if he was properly attired. His clothes are all dirty, they are wrinkled. He is waiving his right to be in front of the jurors today.

[State]: There is no such right they are referring to."

Although at trial the State initially contended that a defendant cannot waive his right to be present at *voir dire*, on appeal the State agreed that in fact a defendant may knowingly and voluntarily waive his right to be present at trial. The State alleges that defendant's response, "That would be more better" was unclear and ambiguous and did not constitute a waiver. The State contends, assuming *arguendo* that the trial court erred in ordering defendant to be present, such error was harmless.

Section 115—8 of the Code of Criminal Procedure (Ill. Rev. Stat. 1981, ch. 38, par. 115—8) permits a defendant to waive his right to be present at trial.

Since it has been held that "defendant's constitutional right to be personally present at all stages of the trial extends *from arraignment to final disposition*" (emphasis added), it is clear that the jury selection process is included. "Defendant's right to be present at his criminal trial is conferred for his benefit and protection, but like other constitutional rights, it may be waived." *People v. Davis* (1979), 69 Ill. App. 3d 548, 551, 388 N.E.2d 167, 169.

In *People v. Redding* (1976), 43 Ill. App. 3d 1024, 357 N.E.2d 1227, the court held that *voir dire* examination commenced in defendant's presence can be completed where defendant is voluntarily absent.

Since *voir dire* constitutes a part of the trial, we conclude that the trial court erred in compelling defendant to remain present. The issue, then, is whether the error was harmless.

In *In re Staley* (1977), 67 Ill. 2d 33, 37, 364 N.E.2d 72, 73, the court held that "an accused has the right to stand trial 'with the appearance, dignity, and self-respect of a free and innocent man.' " In *Estelle v. Williams* (1976), 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691, the court held that a trial court's order compelling a defendant to stand trial in prison garb deprives the defendant of his presumption of innocence. However, where defendant raises no objection, his right not to stand trial in prison garb is waived.

In *People v. Harlan* (1979), 75 Ill. App. 3d 168, 393 N.E.2d 1203, where the jury viewed the defendant briefly in handcuffs, the defendant alleged that this violated his right to a presumption of innocence. The appellate court disagreed, however, holding that the brevity of the incident, coupled with the strength of the case against the defend-

ant, "makes it highly unlikely that the jury was materially prejudiced by the minor episode involving handcuffs."

In *People v. Medley* (1983), 111 Ill. App. 3d 444, 444 N.E.2d 269, where the defendant had ample opportunity to obtain civilian clothing before trial but failed to do so, the defendant's appearance before the jury in jail clothing was found to be harmless error since *the error did not contribute to defendant's conviction.*

■ In the instant case, we believe that witnesses' testimony, defendant's alleged confession, taped telephone recordings of defendant's conversations with police and defendant's fingerprint found on the victim's book were sufficient evidence to support conviction. Moreover, defendant appeared in allegedly inappropriate clothing only on the first day of trial. During the remainder of the six-day trial he wore proper garb. Thus, we conclude that in the case *sub judice* the trial court's error was harmless and did not contribute to defendant's conviction.

## II

■ The defendant next contends that during closing argument the prosecutor improperly made comments vouching for the credibility of State witnesses and expressed her personal opinion that defendant was guilty. These comments included:

"This man right here, he is a murderer and a killer and he told the police how he did it ***. When Mr. Fletcher [defense counsel] says he is not calling me a liar or Mr. Devlin [the second prosecutor], he is wrong because when he says I put on a liar, when he says I put on a police officer that is telling lies, I am vouching for that liar too. And that is not what I did. My license means more to me than that ***. I will tell you why Detective Kajari isn't lying. He is the man that murdered that girl and he knows how he did it."

The trial court sustained defense counsel's objections to the prosecutor's comments and instructed the jury to disregard these statements.

The State claims that the prosecutor's comments made during closing argument were proper because they were either comments on the evidence or were in response to comments made by defense counsel in his closing argument.

There is no error in prosecution comments about a subject, " 'if that subject is proved either by direct evidence or is fairly inferable from facts and circumstances proved. An argument based upon the facts appearing in proof or on the legitimate inferences deducible

therefrom is proper.' " *People v. Jackson* (1981), 100 Ill. App. 3d 318, 320, 426 N.E.2d 1132, 1135; *People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328.

In the instant case, the prosecution's comments affirming the veracity of Detective Kajari's testimony were invited by defense counsel's attack on the credibility of Kajari's testimony. A prosecutor's argument is proper comment if it is invited by defense counsel's remarks. *People v. Medley* (1983), 111 Ill. App. 3d 444, 444 N.E.2d 269; *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339; *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.

■ Defendant also contends that the reading by prosecutor during closing argument of notations written by the victim in one of her books was improper. The prosecutor read the following:

"Homicide; premeditated homicide; reasonable; reasonable doubt; evidence; testimony; proof; accurate; acquittal; defendant; prosecution; verdict."

Defense counsel objected to this reading on the grounds that such statements allegedly "emphasize the sufferings of the victim and family." The trial court overruled defense counsel's objections.

In *People v. Mahon* (1979), 77 Ill. App. 3d 413, 395 N.E.2d 950, where the prosecutor questioned an X ray of the decedent's skull as if it were a witness, his conduct was found to be an improper effort to arouse the sympathies and passion of the jury. Though these statements were held to be improper, they were found to be harmless error in view of the overwhelming evidence against the defendant.

The evidence against defendant in the instant case consisted of testimony by witnesses who placed him at 3338 North Southport (the location of the murder) on the day of the murder and saw him talking with the victim; defendant's confession consistent with the autopsy report (death due to manual strangulation); a fingerprint of defendant found on the victim's book; and taped telephone recordings of conversations between the police and defendant.

Although the prosecutor's reading of the victim's written notes may have been improvident, her remarks were not so prejudicial that they constituted a material fact in defendant's conviction or resulted in substantial prejudice. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 407 N.E.2d 988; *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Jackson* (1981), 100 Ill. App. 3d 318, 426 N.E.2d 1132.) We do not believe that the verdict would have been otherwise had these remarks not been made. *People v. Belton* (1982), 105 Ill. App. 3d 10, 433 N.E.2d 1119.

Further, the court instructed the jury to disregard the prosecu-

tion's remarks, directed it to consider only the evidence presented and advised it that closing arguments are not evidence. (Illinois Pattern Jury Instructions, Criminal, Nos. 1.01 and 1.03 (2d ed. 1981).) In many cases such instructions have been held to cure prejudice from a prosecutor's improper remarks in closing argument. *People v. Baptist; People v. Mahon* (1979), 77 Ill. App. 3d 413, 395 N.E.2d 950.

■ Also, during closing argument, the State commented on the sufferings of the victim's family:

"I didn't hear much talk from Mr. Fletcher [defense counsel] about the victim in this case.

Well, these papers and these books and this picture and that box are all that is left of that girl, Christine Jordan. That is all that is left of her. That is all that is left for her parents who are out there."

No objection was made at trial to these statements. As a general rule, a challenged remark that was not objected to at trial is considered to be waived and cannot be raised for the first time on appeal. *People v. Bloodworth* (1979), 68 Ill. App. 3d 341, 385 N.E.2d 904.

### III

■ Defendant further contends that a proper foundation was not laid for the admission of two tape recordings (People's exhibits Nos. 26 and 27) made by Detective Bittenbinder because the voices on the tapes were allegedly not identified, the recording machine was not shown to be in proper working condition, and the competency of the operator was not established.

The State responds that a proper foundation was laid: the testimony of Officers Prunicki and Nelson and of Juanita Jackson established the identity of the voices on the tapes; the testimony of Rimicci, the electronic maintenance technician, established the capability of the machines recording "911" calls; and the testimony of Rimicci and Detective Bittenbinder establishing the competency of the operator (Detective Bittenbinder) who reproduced the calls. The trial court agreed that a proper foundation was laid, and the tapes were admitted into evidence.

Sound recordings, either on wire or tape, which are otherwise competent, material and relevant, are admissible into evidence if a proper foundation has been established to assure the authenticity and reliability of the recording. A proper foundation for the admission of a sound recording is made when a party to the conversation testifies to the accuracy of the recording and the defendant makes no claim of any changes or deletions in the recordings. *People v. McCommon*

(1979), 79 Ill. App. 3d 853, 399 N.E.2d 224.

Officer Prunicki testified People's exhibit No. 27 contained a true and accurate recording of the conversation he had with a male caller on July 17, 1981, and that there had been no changes or deletions in the tape. Officer Nelson testified People's exhibit No. 26 was a true and accurate recording of the conversation he had with a male caller on July 17, 1981, and that no changes or deletions in the tape were made. Juanita Jackson identified the voice of the caller on the tape as that of defendant.

We conclude that there was a sufficient foundation for admission of the "911" tapes, and the trial court did not err in admitting these tapes into evidence.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HARTMAN, P.J., and DOWNING, J., concur.