No. 2--94--1341     

          

________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE OF           )  Appeal from the Circuit Court

ILLINOIS,                            )  of Lake County.

                                )

     Plaintiff-Appellee,             )

                                     )  No. 93--CF--2711

v.                                   )

                                     )

JOHN K. STEINMETZ,                   )  Honorable

                                     )  John R. Goshgarian,

     Defendant-Appellant.            )  Judge, Presiding.

________________________________________________________________

     JUSTICE COLWELL delivered the opinion of the court:

                                     

     Defendant, John Steinmetz, was convicted of felony retail

theft (720 ILCS 5/16A--3(a) (West 1992)).  Defendant appeals,

contending that (1) the trial court should have conducted a hearing

on defendant's fitness to stand trial where the record shows that

defendant was taking psychotropic medication at the time of trial;

(2) the court erred in denying defendant's motion for a continuance

to obtain medical records to support his insanity defense; and (3)

the court erred in requiring defendant to stand trial in his jail

uniform.

     Daniel Meier, a part-time security guard at a Jewel store, saw

defendant take 10 packs of cigarettes from a display and put them

in a shopping basket carried by a male companion.  As defendant and

his companion proceeded down aisle 5, defendant put the cigarettes

in his jacket pocket.  He then went to the front of the store and

sat down.  After his companion went through the checkout line and

paid for items in the basket, defendant started to leave the store.

     Meier detained the pair because defendant had not paid for the

cigarettes.  When Meier confronted defendant, he initially denied

that he had any cigarettes.  He then gave Meier two packs, then

another two packs.  The remaining packs fell to the floor and

defendant tried to kick them under a display case.  Defendant then

said that he had forgotten to pay for the cigarettes.

     An information filed December 16, 1993, charged defendant with

retail theft.  The charge was enhanced to a felony because

defendant had prior theft convictions.

     Defendant filed a motion requesting a hearing on his fitness

to stand trial.  The motion asserted, among other things, that

defendant advised defense counsel that he had undergone psychiatric

care for bipolar disorder and was then taking Lithium, Valium, and

Doxepin.  The motion also recited defense counsel's personal

observations of defendant and concluded that he was unable to

understand the nature of the proceedings or assist in his defense.

     On February 18, 1994, the court found defendant unfit to stand

trial.  The court ordered him placed in the custody of the

Department of Mental Health for evaluation and treatment.

     The court held another fitness hearing on August 25, 1994. 

Defense counsel stipulated to the contents of a report from the

Elgin Mental Health Center.  The report, prepared by psychologist

Connie Kinast, states that defendant had been prescribed

psychotropic medication, specifically, Diazepam and Lithium

Carbonate.  Kinast concluded that defendant was fit to stand trial.

     Defense counsel contended, however, that defendant remained

unfit.  Defendant testified.  After considering the report,

defendant's testimony, and counsels' arguments, the court found

defendant fit to stand trial, on the same date of August 25, 1994,

and set the case for trial on September 19, 1994.

     On September 16, defendant filed and the court heard a motion

to continue the trial date but apparently did not rule on the

motion.  The motion alleged that defendant was not prepared for

trial because his "extensive mental health history" was "being

compiled."  The motion further alleged:

          "Most of these in-patient hospitalizations do appear to

     impact on the defendant's mental state at the time of the

     commission of the alleged offense as each appear [sic] to be

     related to the same ongoing and longstanding mental disorders

     and disabilities."

The motion asserted that the mental health records were expected to

arrive within the next week.  The court denied the motion for a

continuance on September 19, 1994, the day of trial.

     On September 19, 1994, defense counsel said that he expected

to receive the records at any time.  He requested a continuance of

no more than one week to receive and review the records.  The court

denied the motion.  Defense counsel then requested a brief

continuance to permit defendant to change into street clothes

rather than having defendant tried in his jail uniform.  The court

denied that motion as well and the cause proceeded to trial.

     Meier was the State's only witness.  Defendant testified that

he was taking medication every day.  Without the medication, he

felt dizzy and occasionally blacked out.  At the time of trial, he

was taking medication to calm him, but it was not working very

well.  He remembered nothing about being in the Jewel store that

night.  He had talked with doctors at a Veterans' Administration

(VA) hospital and at the Elgin Mental Health Center about his

memory problems.  

     The court instructed the jury on the insanity defense, but the

jury found defendant guilty.  The court denied defendant's post-

trial motion and sentenced him to three years' imprisonment. 

Defendant filed a timely notice of appeal.

     Defendant first contends that the court should have sua sponte

ordered a fitness hearing because the record reveals that defendant

was taking psychotropic medication at the time of trial.  The State

responds that defendant had a fitness hearing and is not entitled

to another.

     Due process prohibits the prosecution of a defendant who is

unfit to stand trial.  People v. Brandon, 162 Ill. 2d 450, 455-56

(1994).  A defendant is considered unfit if, because of a mental or

physical condition, he is unable to understand the nature and

purpose of the proceedings or to assist in his defense.  725 ILCS

5/104--10 (West 1992); People v. Eddmonds, 143 Ill. 2d 501, 512

(1991).  The circuit court has a duty to order a fitness hearing

whenever a bona fide doubt exists of a defendant's ability to

understand the charges and participate in his defense.  People v.

Kinkead, 168 Ill. 2d 394, 407 (1995).

     At the time of trial, section 104--21(a) of the Code of

Criminal Procedure of 1963 provided that "[a] defendant who is

receiving psychotropic drugs or other medications under medical

direction is entitled to a hearing on the issue of his fitness

while under medication."  725 ILCS 5/104--21(a) (West 1992).  In a

line of recent cases beginning with Brandon, the supreme court has

held that a trial court must order a fitness hearing when it

receives information that a defendant is taking psychotropic

medication, even if defendant does not request one.  Brandon, 162

Ill. 2d at 457; People v. Birdsall, 172 Ill. 2d 464, 476-77 (1996). 

If the record does not fully disclose the circumstances of

defendant's use of psychotropic drugs, the remedy is a partial

remand for the taking of evidence on this question.  Kinkead, 168

Ill. 2d at 415.

     Of course, defendant acknowledges that the trial court

conducted a fitness hearing within a month of the trial date and

found defendant fit to stand trial.  However, defendant complains

that this was merely a "general" fitness hearing that did not

specifically consider the effects of the psychotropic medication. 

Defendant argues that, "[h]ad there been a full-blown hearing on

the issue of the medication's effects, the psychologist making the

report presumably would have been required to testify to the bases

for her conclusions, so that the court could determine whether the

medication being given, while perhaps calming defendant,

nevertheless affected defendant's ability to make cognitive

decisions about how to proceed at trial."

     Neither section 104--21(a) nor the Brandon line of cases

creates a right to a separate fitness hearing on the effect of

psychotropic medication on a defendant's ability to understand and

participate in the proceedings.  The statute and cases merely

provide that a defendant's ingestion of psychotropic drugs is one

circumstance which may raise a bona fide doubt of his fitness to

stand trial.

     In this case, the trial court relied on Kinast's report in

concluding that defendant was fit for trial.  The one-page report

notes that defendant was then being prescribed Diazepam and Lithium

Carbonate and concludes that defendant was fit for trial.  The only

logical conclusion that can be drawn from the report is that Kinast

considered the medications' effect in reaching her conclusion that

defendant was fit for trial.  If defendant wanted to explore the

bases of Kinast's conclusions he could have subpoenaed her to

testify at the hearing or perhaps obtained an independent

evaluation.  Instead, defendant stipulated to the contents of the

report and relied on his own testimony to attempt to establish his

continuing unfitness.

     We decline to hold that Brandon's nonwaiver rule requires a

trial court not only to order a hearing sua sponte if defense

counsel fails to request one, but also to override counsel's trial

strategy in the conduct of that hearing.  Whether to present the

testimony of a particular witness is generally a question of trial

strategy.  People v. Jones, 155 Ill. 2d 357, 369 (1993).  Here,

defendant's use of psychotropic drugs was known to the psychologist

conducting the evaluation and to the trial court.  Defendant had

the opportunity to present additional evidence.  Under these

circumstances, defendant is not entitled to a second opportunity to

establish his unfitness for trial.

     People v. Johnson, 276 Ill. App. 3d 656 (1995), and People v.

Guttierez, 271 Ill. App. 3d 301 (1995), on which defendant relies,

are distinguishable.  In those cases, although the trial court, the

prosecutor, and defense counsel were aware of reports stating that

defendants were "mentally fit for trial, with medication," the

courts failed to conduct the required fitness hearings.

     Defendant next contends that the court erred in denying his

request for a short continuance to obtain medical records that he

claims were necessary to establish an insanity defense.  Although

defendant testified at trial about his history of mental illness

and treatment, he presented no medical opinions on this question. 

Thus, defendant contends, the inability to secure his medical

records prior to trial hampered his ability to present a defense.

     The granting of a motion for a continuance is within the trial

court's sound discretion, and its ruling will not be reversed

absent an abuse of that discretion.  People v. Collins, 106 Ill. 2d

237, 281 (1985).  In reviewing the denial of a continuance to

secure evidence, the court should consider (1) whether defendant

was diligent; (2) whether the evidence was material and might have

affected the jury's verdict; and (3) whether defendant was

prejudiced.  People v. Ward, 154 Ill. 2d 272, 307 (1992).

     We agree with the State that defendant failed to establish his

diligence in securing the medical records.  Nothing in the record

shows when defense counsel first requested the records, or

documents defendant's subsequent efforts to secure their timely

production.

     Even if defendant established his diligence, however, he

cannot demonstrate prejudice from the absence of the records at

trial.  As the State points out, when the records were eventually

produced, the virtually unanimous conclusion of the professionals

who examined defendant was that he was faking symptoms of mental

illness.  Kinast's report from the Elgin Mental Health Center

states that defendant had a "tendency to exaggerate symptoms,

resulting in a 'faking bad' profile."  Another psychologist, John

Dunne, examined defendant before sentencing.  He concluded that the

results of psychological tests he administered suggested a "high

likelihood of an invalid profile due to the over-reporting of

psychopathology."

     A report from the VA hospital states that defendant had spoken

about memory problems, but no clear memory deficit was apparent. 

Rather, defendant exhibited a "selective memory loss when he chose

not to recall things."  Speaking of the instant offense, defendant

told a nurse, " 'I've been doing this for years, sometimes I get

caught and sometimes I don't.' "

     In light of the overwhelming opinion of the experts that

defendant was faking symptoms, we conclude that defendant has not

established he was prejudiced by not having the reports available

at trial.  Defendant does not point to anything specific in the

medical records that would have supported his insanity defense. 

The trial court did not abuse its discretion in denying a

continuance.

     Defendant's final contention is that the court erred by

denying his motion for a continuance on the morning of trial so

that defendant could change from his jail uniform into street

clothes.  Defense counsel stated, "I have already discussed this

with the Jail on Friday and this morning.  They advised me that

would be done."  The trial court stated that it was not done, but 

denied the motion.

     A defendant's right to a fair trial is violated when he is

forced to appear before the jury in readily identifiable jail

clothing.  Estelle v. Williams, 425 U.S. 501, 505-06, 48 L. Ed. 2d

126, 131, 96 S. Ct. 1691, 1693-94 (1976).  However, the right not

to be tried in jail clothing is, like many other rights of criminal

defendants, subject to harmless-error analysis.  Estelle, 425 U.S.

at 506, 48 L. Ed. 2d at 131-32, 96 S. Ct. at 1694; People v.

Medley, 111 Ill. App. 3d 444, 448 (1983).

     In Medley, the court observed that defendant "had ample

opportunity to obtain civilian clothing before his trial" and

decried defendant's motion for a continuance as a "delaying

tactic."  Medley, 111 Ill. App. 3d at 448.  In this case, defense

counsel represented that he contacted jail officials twice in an

attempt to assure that defendant would have access to "civilian"

clothing for trial and jail personnel assured him that "it would be

done."  However, on the morning of trial, defendant apparently was

brought to court in his jail uniform.  Under these circumstances,

we decline the State's invitation to find that defendant's request

was merely a delaying tactic.  We can perceive no tactical

advantage from a delay of 15 to 30 minutes.  The trial court should

have granted defendant's request for a brief continuance.

     However, we find that the error was harmless beyond a reason-

able doubt in light of the overwhelming evidence of defendant's

guilt.  Meier saw defendant place the cigarettes in a basket,

transfer them to his coat pocket, and walk past the cash registers

without paying for them.  When Meier confronted defendant, he first

denied having any cigarettes.  Then, when several packs fell out of

his pocket, he attempted to kick them under a display case. 

Defendant's actions demonstrate his consciousness of guilt and

belie his assertions that he merely forgot to pay for the

cigarettes.  In light of this substantial and direct evidence of

defendant's guilt, defendant's appearance before the jury in jail

clothing could not have affected the jury's verdict.

     The judgment of the circuit court of Lake County is affirmed.

     Affirmed.

     GEIGER, P.J., and BOWMAN, J., concur.