William Leroy WRIGHT

v.

The STATE OF TEXAS.

Civ. A. No. S-73-18-CA.

United States District Court,
E. D. Texas,
Sherman Division.

May 28, 1975.

Robert W. Minshew, Sherman, Tex., for plaintiff.

Mark L. Perlmutter, Asst. Atty. Gen., Austin, Tex., for defendant.

**6**

MEMORANDUM OPINION AND ORDER

JUSTICE, District Judge.

William Leroy Wright was convicted of murder with malice in 1957, after trial before a jury in the Sixteenth Judicial District Court of Denton County, Texas. He was sentenced by the jury to a term of ninety-nine years. After exhaustion of his state remedies, Wright petitioned this court for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Hearing was held on August 27, 1974, at which time petitioner raised several issues. Subsequently the court learned that the petitioner was released on parole April 9, 1975. Petitioner Wright informed the court that he desires to pursue his claims, despite his release. *See Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *McDaniel v. Sheriff of Dallas Co.,* 445 F.2d 851 (5th Cir. 1971). Of the issues presented by petitioner, the court finds a degree of substance in two allegations: (1) that Wright was "shackled" or handcuffed in view of the jury; and (2) that Wright was forced to stand trial in "jail clothing".

*Jail Clothing*

Petitioner Wright testified that he desired to wear his "blue serge suit, white shirt, and tie" at his trial. He further testified that, although his mother brought these items to the jail, the Sheriff refused to receive them. Petitioner's mother, in an affidavit, corroborates her son's allegation. Sheriff Barnes, however, recalled that Wright's mother asked about bringing the clothes, and that he gave his permission to do so, but that she never returned with the suit. Wright's attire at his trial consisted of two pairs of overalls. One pair, which was striped, belonged to Wright; they were what he was wearing when arrested. The other pair, which was blue, was given to him by the jailer. While there was no testimony as to whether petitioner's attire was clearly cognizable as "prison garb", *see Williams v. Estelle,* 500 F.2d 206 (5th Cir. 1974), it was ascertained that his clothing was distinctive; *i. e.,* that no one else in the courtroom was so casually dressed.

In *Brooks v. Texas,* 381 F.2d 619 (5th Cir. 1967), trial in prison clothes was termed "inherently unfair." Then, in *Hernandez v. Beto,* 443 F.2d 634 (5th Cir. 1971), *cert. denied* 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971), the practice was held to be constitutional error, as a violation of the presumption of innocence. *See also Bentley v. Crist,* 469 F.2d 854 (9th Cir. 1972); *Gaito v. Brierley,* 485 F.2d 86 (3rd Cir. 1973); *People v. Shaw,* 381 Mich. 467, 164 N.W.2d 7 (1969); *People v. Zapata,* 220 Cal.App.2d 903, 34 Cal.Rptr. 171 (1963), *cert. denied* 377 U.S. 406, 84 S.Ct. 1633, 12 L.Ed.2d 495 (1964); *cf. Anderson v. Watt,* 475 F.2d 881 (10th Cir. 1973). In *Williams v. Estelle, supra, Hernandez* was held to be applicable retroactively. Each case of trial in prison garb is to be evaluated on its own facts, *Hollins v. Beto,* 467 F.2d 951, 952 (5th Cir. 1972), and in habeas proceedings, the petitioner bears the burden of proving the error occurred. *Swain v. Alabama,* 380 U.S. 202, 226–227, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Richardson v. State of Texas,* 425 F.2d 1372 (5th Cir. 1970). Should the petitioner meet his burden, the court must determine whether the error was harmless, beyond a reasonable doubt. *Hernandez v. Beto, supra.* The error is harmless, if the reviewing court finds overwhelming evidence in support of the verdict. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *See Bates v. Estelle,* 360 F.Supp. 1278 (S.D.Tex.1973), for application of this rule in a prison garb case.

The court has carefully considered petitioner's claim in light of the above authorities. Assuming that plaintiff has met his burden by showing that he was tried in such distinctive attire, the court must determine whether the error was harmless. Appellant, before the Court of Criminal Appeals for the State of Texas, conceded the sufficiency of the evidence to support conviction. This court, reviewing the incriminating testimony of witnesses Wallace, Sims, Logan, and Jackson, is compelled to conclude that the evidence that appellant killed the victim was, indeed, overwhelming. However, here, as in *Williams v. Es-*

*telle, supra,* the evidence as to malice and intent to kill is not overwhelming. The jury could have found appellant guilty of a lesser degree of homicide. Thus, the court cannot conclude that the error was harmless.

■ It therefore becomes crucial to determine whether petitioner's attire in overalls falls within the proscription against trial in jail clothes. Although this court condemns the practice of compelling a defendant to appear for trial in clothes that clearly distinguish him from everyone else in the courtroom, appellant has not shown that the clothes he wore were typical of and recognizable as "jail clothes", and thus the court cannot conclude that his presumption of innocence was infringed. Accordingly, the court finds no constitutional error on this ground.

*Shackles*

Petitioner Wright testified that the jury was permitted to view him, both in the courtroom and when he was being transported to and from the courtroom, while he was bound in shackles; *i. e.,* with a chain around his waist, wrists and feet. He related that the restraints would be removed after he entered the courtroom, and replaced there before he was to leave for the noon recess, or at the end of a day.

George Hopkins, counsel for petitioner at his trial, testified that he never saw Wright in the courtroom in handcuffs or leg irons, but that he is certain he saw potential jurors view Wright in handcuffs while being escorted from the courthouse elevator to the courtroom on several occasions. There were approximately 150 to 200 special veniremen in the courthouse during the selection of the jury. Jury selection took two and one-half days. Hopkins' best recollection was that the leg-irons were removed at the Sheriff's automobile, before appellant and the Sheriff approached the courthouse.

Sheriff Barnes testified that it was his custom not to put a prisoner's feet in leg-irons, unless they were traveling a long distance. As he was only taking Wright to the courthouse, it is Barnes' belief that the petitioner was never put in leg-irons. He further testified that the handcuffs were removed in his office in the basement of the courthouse, and that Wright did not have them on when coming up to the courtroom on the elevator. While the jurors could have come in the sheriff's door, and a few did, he related that most of them used another entrance. Sheriff Barnes also recalled that if prisoners arrived late, he might wait to take their handcuffs off in the elevator, before taking them to the courtroom.

From this conflicting testimony, and in light of petitioner's burden of proof, the court concludes the following:

(1) It has not been shown that any juror or potential juror saw petitioner in leg-irons or shackles, if any were used.

(2) It has not been shown that the jury, as finally selected, viewed petitioner in handcuffs during the trial.

(3) Petitioner has demonstrated that during the selection of the jury, the special veniremen were permitted to view him while he was handcuffed.

Since there is a significant possibility that among those veniremen who viewed Wright in handcuffs were persons eventually selected to sit on the panel, the court must evaluate this circumstance for possible constitutional error.

■ It has been written that "[f]reedom from shackling and manacling of a defendant during the trial of a criminal case has long been recognized as an important component of a fair and impartial trial." *O'Dell v. Hudspeth,* 189 F.2d 300, 302 (10th Cir. 1951), *cert. denied* 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656 (1951). However, the right to be free from physical restraint is not absolute. The Court of Appeals for the Fifth Circuit has noted that, "it is undoubted that a trial judge has discretion to order that a defendant be handcuffed during trial to prevent his escape, to prevent him from injuring bystanders and officers of the court, or to maintain a quiet and peaceful

trial." *Hernandez v. Beto, supra,* at 636. Handcuffs, shackles, and other forms of physical restraints are only measures of "last resort." *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Hardin v. Estelle,* 365 F.Supp. 39, 46 (W.D. Tex.1973), *aff'd* 484 F.2d 944 (5 Cir. 1973). *See also United States v. Esquer,* 459 F.2d 431 (7th Cir. 1972); *Way v. United States,* 285 F.2d 253, 254 (10th Cir. 1960).

The Court of Appeals for the Seventh Circuit analyzed and categorized various cases involving physical restraint of criminal defendants in *Kennedy v. Cardwell,* 487 F.2d 101 (7th Cir. 1973). The pertinent language from this case is as follows:

> The third group of cases includes those where the defendant was seen in shackles for a short period of time either in the courtroom or somewhere in the courthouse by the jury, by one or more jurors or by veniremen. [Citations omitted.] . . . [T]he only danger to the accused in this group is the possible prejudice such a brief incident may engender. The degree of prejudice to the defendant in this situation is certainly much less than in the situation where the accused sits throughout his trial before the jury in shackles. The majority of cases if read literally, state that such a brief and fortuitous incident is not prejudicial and requires an affirmative showing of prejudice by the defendant. [Cases cited include *Hardin v. United States,* 324 F.2d 553 (5th Cir. 1963).] *Id.* at 109.

There are courts that recognize the possible prejudice a criminal defendant may suffer in these circumstances. *See O'Shea v. United States,* 400 F.2d 78 (1st Cir. 1968), where the court acknowledged that because some veniremen saw the defendant outside the courtroom in shackles, remedial procedures were in order. In *United States v. Bankston,* 424 F.2d 714 (5th Cir. 1970), the appellant was brought into the courtroom while handcuffed. The cuffs were on in the presence of the jury venire for approximately one minute, before they were removed. The trial court determined that appellant had suffered no prejudice and

denied the motion to quash the panel. The trial court further instructed the U. S. Marshal's office to use whatever restraints were necessary in transporting the prisoner to and from the court. Finding these decisions to be within the discretion of the court, subject to reversal only on abuse of discretion, the appellate court affirmed. The court again affirmed the discretion of a trial court in *U. S. of America ex rel. Stahl v. Henderson,* 472 F.2d 556 (5th Cir. 1973).

In *Clark v. State,* 398 S.W.2d 763 (Tex.Cr. App.1966), the Court of Criminal Appeals of the State of Texas, noted that it had "long condemned the practice of bringing an accused into the courtroom or into the view of the jury or jury panel while handcuffed to another prisoner in the view of members of the jury panel." The court ruled that appellant might have eliminated those who had viewed him through voir dire, and thus he was not prejudiced. Since petitioner could not know which veniremen saw him in the instant case, we require no such showing.

■ Again, we note that the petitioner has the burden of proof to sustain his allegation. *See O'Dell v. Hudspeth, supra.* "However, once the petitioner has shown that he has suffered significant harm for no apparent reason, the state must come forward with some explanation." *Hardin v. Estelle,* supra, at 47, n. 13. Here, the petitioner was on trial for murder with malice, a most serious and violent crime. Petitioner contends, however, that the handcuffs were not necessary; that he had voluntarily surrendered to the authorities for arrest, showed no propensity to violence during the trial, and had no prior history of escape attempts.

The state came forward with no justification for permitting petitioner Wright to be viewed by potential jurors, in handcuffs, on several occasions. The record reflects that the petitioner did, in fact, voluntarily surrender. There is no indication that the petitioner offered any resistance to the officers having him in custody at any time. (The record is silent as to any prior history of escape attempts by petitioner.) Further,

there has been no demonstration by the state that the trial judge was made aware of any of the measures taken by the Sheriff and his deputies in handcuffing the petitioner. Hence, it has not been shown that the decision to have the petitioner handcuffed in the courthouse was an exercise of the court's discretion. Moreover, it was not shown that the petitioner could not have been transported to the courthouse well before the veniremen assembled there or after they were lead into the courtroom. By its course of conduct, the state infringed upon the petitioner's right to be presumed innocent and left the veniremen with the impression that he was a dangerous man. The court finds this to be a violation of due process of law. As noted earlier, the court cannot conclude that such a violation was "harmless". Accordingly, the petition for the writ of habeas corpus is GRANTED, this order to be stayed for sixty days to allow the state to retry the petitioner, if it should so desire.