THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHRISTOPHER LEWIS WILKES, Defendant-Appellant.

Fourth District   No. 17506

Opinion filed August 11, 1982.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People. .

JUSTICE WEBBER delivered the opinion of the court:
Defendant was charged, tried, and convicted by a jury in the circuit court of Macon County of the offenses of rape and robbery in violation of sections 11—1 and 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1 and 18—1). He was sentenced to imprisonment, 30 years for rape and 5 years for robbery, these sentences to run concurrently to each other, but consecutively to sentences being served at that time by the defendant under convictions in California.

Since no questions are raised on appeal concerning the adequacy of the State's evidence nor the severity of the punishment, no extended recitation of the facts is necessary for the purposes of this opinion. The sole question raised in this court is the fact that defendant was compelled to appear at trial in shackles and jail uniform. However, the background of this question is important to an understanding of our decision.

Jury trial began on the morning of August 17, 1981, with jury selection. Defendant was present, unshackled and in street clothing, although he was in custody. Apparently the jury had not been selected by the time of the noon recess and defendant was returned to the jail for the midday meal. It also seems that he was shackled for traveling from the courtroom to the jail. Upon being returned by deputy sheriffs to the courtroom for the afternoon proceedings, defendant was outside the courtroom and out of the presence of the veniremen; the deputies were in the process of removing the shackles before entering the courtroom; when they were removed, defendant escaped from the deputies and fled from the courthouse. He was apprehended about one-half hour later, hiding in a trash dumpster about five blocks away. He was then returned to the courtroom wearing ankle and wrist

shackles and a bright orange coverall with the legend "JAIL" stenciled across its back aspect. Defendant remained in such habiliments for the duration of the trial. Evidence of defendant's flight was presented to the jury.

Although in his appeal defendant contests only the appearance at trial in shackles and jail clothing, he also points out two other occasions of the same variety: at a suppression hearing and at the post-trial motion hearing. While not arguing error in these incidents, he argues that the trial court's remarks at those times indicate the court's misapprehension of the law.

Prior to resuming jury selection, the State, out of the presence of the venire, made the record on the defendant's flight. Defense counsel objected to bringing the defendant back to trial in shackles and jail uniform. The trial court overruled the objection, holding "that the restraint is necessary under these facts and circumstances." *Voir dire* was then resumed and at its conclusion with a jury having been selected, defense counsel moved for mistrial on the same grounds as before, the appearance of the defendant in shackles and jail uniform. The State argued that defendant was seated facing the jury and therefore they were unable to see the legend "JAIL" across the back of the coverall. The trial court indicated in its ruling that it would attempt to have the defendant brought in and taken out of the courtroom after the jury had been removed so they could not observe the shackles, since in the court's words they were "not readily visible to the jury panel so long as he's seated at counsel table." As to the uniform, the court stated that it was a "reasonable, necessary precaution." It then denied the motion for mistrial.

Since different considerations apply, we will consider the shackles and the uniform separately. We hold that the shackles were justified; that the uniform was not and was error but harmless error; and that defendant was prejudiced by neither.

The supreme court carefully delineated the factors to be involved in shackling a defendant at trial in *People v. Boose* (1977), 66 Ill.2d 261, 362 N.E.2d 303. It said:

> "A defendant may be shackled when there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the trial. [Citations.] The determination is left to the discretion of the trial judge, and he may select the physical restraints most suitable in light of all the circumstances. [Citation.] The trial judge should state for the record his reasons for allowing the defendant to remain shackled, and

he should give the defendant's attorney an opportunity to present reasons why the defendant should not be shackled. These proceedings should take place outside the presence of the jury. [Citations.]

Factors to be considered by the trial judge in making this determination may include:

'[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.' [Citations.]

A reviewing court examines whether the trial court abused its discretion in requiring the defendant to appear shackled before the jury. It is obvious that the record should clearly disclose the reason underlying the trial court's decision for the shackling and show that the accused's attorney was given an opportunity to oppose this decision. [Citations.]" 66 Ill. 2d 261, 266-67, 362 N.E.2d 303, 305-06.

It will be seen that the experienced trial judge carefully followed the procedural dictates of *Boose*. After the record was made concerning defendant's escape during recess, defense counsel was permitted to object and state the basis for his objection. After the *voir dire* was completed, he was permitted to move for mistrial and state his reasons at greater length. Both proceedings were held out of the presence of the jury. The trial judge did omit to state his reasons, other than saying the precautions were "necessary." However, it is apparent that he was letting the record speak for itself. Unlike *Boose*, where no apparent reason for shackling was advanced other than the nature of the offense, here a successful escape was accomplished in the very midst of trial and thus is far beyond the "reason to believe" he might try to escape. In the instant case escape was not a theory, it was a fact.

Shackling under such circumstances has been approved in other jurisdictions. *Clark v. State* (1967), 280 Ala. 493, 195 So. 2d 786, *cert. denied* (1967), 387 U.S. 571, 18 L. Ed. 2d 967, 87 S. Ct. 2071; *People v. Rittenhouse* (1971), 37 App. Div. 2d 866, 325 N.Y.S.2d 90.

Defendant argues that the trial court misapprehended the law as

demonstrated by the court's remarks at a suppression hearing and at argument on the post-trial motion. Defendant appeared in shackles at the suppression hearing and defense counsel objected. The court overruled the objection, stating, "Isn't the restraint or shackling for the prejudicial effect it may have on the jury ***?" He then indicated that it did not prejudice him. Defendant cites *Boose* and *In re Staley* (1977), 67 Ill. 2d 33, 364 N.E.2d 72, wherein the supreme court set forth three reasons for avoiding shackling:

> "(1) [I]t tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process. [Citations.]" *People v. Boose* (1977), 66 Ill. 2d 261, 265, 362 N.E.2d 303, 305.

█ It is true that the trial judge articulated only one of the reasons set forth in *Boose*, but this is no indication that he was unaware of the others. Furthermore, the suppression hearing dealt with nothing which appeared at trial and at trial the situation had changed radically with the escape which necessarily overrode other considerations.

We turn next to the court's remarks at the hearing on the post-trial motion. He stated in part:

> "Getting to this hearing today. Now then, we have the foundation from the trial. We also have a situation which makes the risk greater. We have a jury verdict of guilty. And again, if there's reason for restraints at the trial, there are certainly restraints here. Once again, I'm not imposing any greater sentence because you are restrained. I'm not any more affected by the fact I see handcuffs, I see them everyday as they bring them in. We always have them taken off right behind the courtroom. We certainly don't follow the rule that everybody who is handcuffed is evidently dangerous and evidently guity and evidently to be condemned; that is not the procedure, that is not the attitude. So, it's a matter of having restraints today. I'm sure that the sheriff has a better idea of what is required in way of restraints than the Court who has very limited contact with any defendant and his conduct. I'm not up in the jail to see what goes on. Again, I do not think it is a matter that the Court ought to intervene and say, 'Mr. Sheriff, you have the responsibility of the supervision and custody of this man, but the Court is going to tell you how to exercise that responsibility. The court's going to say to you, Mr. Sheriff it's your problem, but you cannot use what you should in order to accomplish the problem.' And, I'm not about to say to the sheriff, 'Remove those handicaps and let him run if he would run.' I'm not about

to say to the sheriff, 'You can't do what is necessary in order to perform your job.' So again, with that matter, the Court is saying there is no error in having him here today under the restraint that he's experiencing."

From this defendant argues that the trial court was overborne by the sheriff and deferred completely to his opinion rather than making its own independent judgment. There is nothing in the record to sustain such a theory. At the testimonial hearing immediately following the escape a jailer opined that defendant was an escape risk, but otherwise there is no indication of any communication between the sheriff and the trial judge. In reading the court's remarks fairly and as a whole, it is apparent that he was considering the sheriff's opinion as only a part of his entire consideration of the factors set forth in *Boose*.

Defendant's argument that errors in judgment by the trial court at the suppression hearing and at the post-trial hearing is without merit. It then follows that no error having been made at those times, there can be no taint extended to the proceedings at trial.

Defendant further argues that the trial court did not consider alternatives to shackling. He suggests the placing of additional guards in and about the courtroom. There is no indication that such additional personnel were avilable to the court without seriously infringing upon their other duties and obligations. It is also debatable as to which might have the more adverse effect upon the proceedings: shackles which were not visible nor obtrusive versus a veritable army of uniformed deputies present and at the ready.

Defendant also argues that leg shackles were enough and that little could be accomplished with the additional handcuffs. Handcuffs might be an impediment to a defendant in assisting his counsel (*e.g.,* passing notes), but there is no indication in this record that defendant ever attempted to communicate with his counsel in any way.

We find no error in the trial court's exercise of discretion (*Boose*) in shackling the defendant at trial, and we find no misapprehension in the trial court of the governing principles of law.

The orange jail uniform presents an entirely different situation. The Supreme Court has said that the State cannot constitutionally compel a defendant to stand trial before a jury in identifiable prison garb. (*Estelle v. Williams* (1976), 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691.) The *Estelle* court held that there is no essential State policy to be served in appearing in jail clothing, unlike the necessity of sometimes, and under proper circumstances, using physical restraint.

In the instant case the trial court said only that the orange coverall was a "reasonable, necessary precaution," against what we cannot fathom. It might facilitate recapture, but we are at somewhat of a loss to see how another escape would be possible, given the presence of handcuffs and leg irons. Even if there were some additional security in the jail uniform, it must be balanced against the defendant's interest in appearing in street clothing; in such a balance the weight preponderates in favor of the defendant.

In *Estelle* the Supreme court held that the error was waived by the failure of the defendant to object. Such is not the case here. Proper objection was lodged, not once, but twice, at trial, and also at the other hearings.

The requirement of jail garb was error, but it must be ascertained whether or not it was harmless error. Harmless constitutional error, as a doctrine, was laid down by the Supreme Court in *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, but no precise formula for its application was announced. The appellate court in *People v. Collins* (1980), 85 Ill. App. 3d 1056, 1060, 407 N.E.2d 871, 875, suggested three approaches:

"(1) Focusing on the error to determine whether it might have contributed to the conviction [citation]; (2) Examining the other evidence in the case to see if overwhelming evidence supports the conviction [citation]; (3) Determining whether the error is merely cumulative or duplicates properly admitted evidence [citations]."

*Estelle* did not say that harmless error cannot apply in the case of an improperly clothed defendant, and the application of *Chapman* can be clearly inferred from the reasoning of *Estelle.*

We find *Collins* tests (1) and (3) appropriate here. The significant fact in this case is defendant's flight, evidence of which was properly placed before the jury. The *Estelle* court quoted from *United States ex rel. Stahl v. Henderson* (5th Cir. 1973), 472 F.2d 556, *cert. denied* (1973), 411 U.S. 971, 36 L. Ed. 2d 694, 93 S. Ct. 2166: " 'No prejudice can result from seeing that which is already known.' " *Estelle v. Williams* (1976), 425 U.S. 501, 507, 48 L. Ed. 2d 126, 132, 96 S. Ct. 1691, 1694.

The jury knew of the escape and to the extent that they knew, if at all, of the shackles, which we have held not to be error, the presence of the jail uniform was only cumulative and duplicative of properly admitted evidence and did not contribute to the conviction.

As to *Collins* test (2), overwhelming evidence, the case is

somewhat closer. While the identification testimony and the forensic evidence standing alone might not be considered overwhelming, the addition of the element of flight does make them so. Its presence satisfies *Collins* (2).

■ Under any of the tests delineated in *Collins*, the error was harmless.

For all of the foregoing reasons, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.