THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY JAY MAZAR, Defendant-Appellant.

First District (2nd Division)   No. 1—00—3235

Opinion filed August 6, 2002, *nunc pro tunc* June 28, 2002.

Michael J. Pelletier and James K. Leven, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Sara E. Bloom, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Defendant Anthony Jay Mazar appeals from the circuit court's sentencing order on his convictions. Following a jury trial, in which defendant appeared *pro se*, he was convicted of two counts of burglary and one count of aggravated possession of a stolen vehicle. Defendant was subsequently sentenced to 13 years' imprisonment on each conviction, to run concurrently. On appeal, defendant contends that the trial court erred in refusing to appoint standby counsel for him, he was denied his fundamental right to a fair trial because he was forced to proceed to trial in prison clothing, and he was denied due process because the trial court's admonishments with respect to how to preserve issues for appeal misinformed him. We affirm defendant's convictions, but remand this cause with directions that the trial court advise defendant of his appeal rights in conformity with current Supreme Court Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001) and to allow defendant to file a motion challenging his sentences.

## STATEMENT OF FACTS

Defendant's convictions on two counts of burglary and one count of aggravated possession of a stolen vehicle were based on a series of events that occurred on June 3, 2000. The trial court sentenced defendant to 13 years' imprisonment on each count, to run concurrently. Because defendant does not challenge his convictions, the facts of the offenses and events surrounding his arrest are not set forth in detail. Only those facts pertinent to the issues on appeal are stated below.

Prior to defendant's trial, on July 26, 2000, defendant elected to proceed *pro se*. The trial court thoroughly admonished defendant with respect to the perils of doing so and specifically stated that it would not appoint standby counsel. Thereafter, defendant was admonished several more times about the perils but persisted in proceeding *pro se*. On August 1, at another pretrial hearing, the trial court noted that defendant was dressed in jail clothes. Defendant stated that that was okay. When told that he could be provided with civilian clothing, defendant stated that that was a "nice offer. I accept, if it happens." Again, on August 22, the issue of defendant's clothing arose. At that time, before a different judge, defendant indicated that another judge had advised him that "they" would get him clothes, to which defendant had responded that that was a generous offer and he would accept it if true. The court then requested that the public defender obtain civilian clothing for defendant, which he agreed to do.

On August 24, just prior to commencement of defendant's trial, defendant requested appointment of standby counsel. After indicating the problems inherent with appointment of standby counsel, the court, relying on a United States Supreme Court decision, declined defendant's "eleventh hour" request for appointment of standby counsel. At this time, defendant also objected to the fact that he had to wear prison clothes. Defendant had been provided a blue shirt, a blue coat, and a blue polka dot tie by the public defender's office. However, the public defender did not have pants to fit defendant and he was wearing khaki pants issued by the Department of Corrections. Apparently, the prison markings on the pants were only visible if defendant stood. The trial court indicated that neither it, the State, nor the public defender's office was constitutionally required to supply defendant with civilian clothing. The court suggested that at the lunch break, prior to selection of the jury, that defendant turn his pants inside out. Defendant followed this suggestion and proceeded to trial in this manner.

After defendant was convicted, he filed a motion for a new trial, contending, *inter alia*, that the jury had been tainted because he was a

*pro se* defendant who had been required to wear "filthy prison garb trousers inside out and flimsy heelless prison shoes," and that the trial court erred in denying his request for standby counsel. Following the parties' arguments, the trial court denied defendant's motion, finding that appointment of standby counsel was not appropriate. With respect to defendant's attire, the trial court noted that the public defender stated that it had no pants to fit defendant. According to the court, defendant had turned the pants inside out and they looked like Dockers, which the trial court did not see as a "problem." Lastly, the trial court stated that it did not think there was "any problem with the jury knowing somebody was in custody" and that defendant was "wearing civilian clothing." This appeal followed.

## ANALYSIS

### I. Right to Appear Both *Pro Se* and With Representation of Counsel

#### A. Constitutional Provision

Defendant first contends that the Illinois Constitution, article I, section 8, grants a defendant the right to simultaneously appear *pro se* and with the assistance of counsel. According to defendant, the language of our constitutional provision is clear and unambiguous. Defendant maintains that section 8 is not as limited as the corresponding right in the federal constitution. Defendant further argues that even if the two provisions were the same, we can construe Illinois's constitutional provisions independently as providing more expansive rights. Defendant asserts that this is an issue not previously decided by any Illinois court. Defendant further contends that a harmless error analysis is not applicable here because he was denied a fundamental right. The State has failed to respond to defendant's constitutional argument.

■ Article I, section 8, of the Illinois Constitution provides:

"In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel." Ill. Const. 1970, art. I, § 8.

Contrary to defendant's argument, the issue of whether a defendant has a right to appear both *pro se* and with assistance of counsel under section 8 has been addressed by this court. In *People v. Guthrie*, 60 Ill. App. 3d 293, 376 N.E.2d 425 (1978), the defendant, on appeal, argued that the trial court's refusal to allow him to proceed both *pro se* and with counsel violated, *inter alia*, section 8. *Guthrie*, 60 Ill. App. 3d at 295. The *Guthrie* court noted that it was making the first ruling by a court of review in the State on whether a criminal defendant "has an

absolute right arising from the Federal or State constitutions, the statutes or common law to appear by counsel while at the same time conducting portions of the defense himself." *Guthrie*, 60 Ill. App. 3d at 295. The *Guthrie* court then observed that the Illinois Supreme Court had previously stated:

> " 'An accused has either the right to have counsel act for him or the right to act himself. As pointed out in *United States v. Mitchell*, 137 F.2d 1006 [(2d Cir. 1943)], it is obvious that both of those rights cannot be exercised at the same time.' " *Guthrie*, 60 Ill. App. 3d at 296, quoting *People v. Ephraim*, 411 Ill. 118, 122, 103 N.E.2d 363 (1952).

The *Guthrie* court then concluded that under the federal constitution, there was no right for a defendant to both appear *pro se* and with the assistance of counsel. *Guthrie*, 60 Ill. App. 3d at 297. With respect to article I, section 8, of Illinois's constitution, the *Guthrie* court stated:

> "Although the Illinois constitutional mandate in regard to personal representation and that by counsel is in the conjunctive, we follow the dictum of *Ephraim* that neither the State Constitution, its statutes nor the common law require a trial court to permit a defendant to proceed both in person and by counsel. \*\*\* We are not persuaded that, even under optimum circumstances, a defendant has any such right." *Guthrie*, 60 Ill. App. 3d at 297.

See also *People v. Lighthall*, 175 Ill. App. 3d 700, 704-05, 530 N.E.2d 81 (1988) (citing *Guthrie* for the proposition that a defendant has no right to representation both *pro se* and by counsel); *People v. Page*, 152 Ill. App. 3d 957, 959, 505 N.E.2d 39 (1987) (stating that a defendant has no right, whether federal or state, to combine representation *pro se* and by counsel, citing *Guthrie*).

Since *Guthrie*, the Illinois Supreme Court, although not specifically addressing the issue under the Illinois Constitution, has refused to require "hybrid" representation. See, *e.g.*, *People v. Pecoraro*, 175 Ill. 2d 294, 333, 677 N.E.2d 875 (1997) (holding that denial of the defendant's request to act as co-counsel did not violate his constitutional right of self-representation); *People v. Redd*, 173 Ill. 2d 1, 39, 670 N.E.2d 583 (1996) (holding that the trial court did not err in refusing the *pro se* defendant's request to have standby counsel cross-examine a witness). We believe that *Guthrie* is well reasoned and see no reason to depart from its holding. Accordingly, we find that defendant had no right to simultaneous *pro se* representation and assistance of standby counsel under the Illinois Constitution.

## B. Abuse of Discretion

Alternatively, defendant maintains that the trial court abused its discretion in denying his request for appointment of standby counsel

because the trial court's reasons for refusing to appoint standby counsel were unpersuasive. According to defendant, the following were the trial court's bases or reasons for denying his request. First, the trial court concluded that by granting a defendant standby counsel, it often persuades the defendant to unwisely choose to proceed *pro se.* Defendant argues, however, that it is his right to make that choice, whether wise or unwise. Second, the trial court found that appointment of standby counsel undermines the defendant's right to a fair trial. Defendant argues that just the opposite is true because counsel is able to guide a defendant. Third, the trial court found that appointment of standby counsel leads a defendant to claim ineffective assistance of counsel on appeal. Defendant argues that the appellate court is well equipped to handle nonmeritorious claims of ineffective assistance of counsel.

■ A trial court has broad discretion in deciding whether to appoint standby counsel for a defendant proceeding *pro se. People v. Williams,* 277 Ill. App. 3d 1053, 1058, 661 N.E.2d 1186 (1996). In deciding whether to appoint standby counsel, the court should consider the following criteria: "(1) the nature and gravity of the charge; (2) the expected factual and legal complexity of the proceedings; and (3) the abilities and experience of the defendant." *Williams,* 277 Ill. App. 3d at 1058, citing *People v. Gibson,* 136 Ill. 2d 362, 380, 556 N.E.2d 226 (1990).

In the instant case, at a pretrial hearing on July 26, 2000, before Judge Joseph Romano, defendant was represented by counsel. However, at this time, defendant indicated that he desired to proceed *pro se.* The trial court thoroughly admonished defendant with respect to the perils of *pro se* representation, including the fact that the court would not allow defendant to change his mind later and that the trial court would not appoint standby counsel. Defendant nonetheless chose to proceed *pro se.* At another pretrial conference on August 1, before Judge Gerald Rohrer, defendant was again admonished about the perils of proceeding *pro se.* On August 22, before Judge Patrick Morse, defendant was again asked if he was sure that he wanted to proceed *pro se.* Defendant responded in the affirmative and stated that it was his sixth time representing himself. Defendant stated that he had two prior losses and "I am in desperate need of a win." At this time, defendant indicated that he had one *pro se* acquittal, two losses, one hung jury, and one mistrial.[1] The court nonetheless offered defendant

---

[1]Defendant's first *pro se* trial was before a jury and he won. Thereafter, he proceeded *pro se* in a bench trial where a mistrial was declared and he was later retried and found guilty. Lastly, defendant proceeded *pro se* before a jury and achieved a hung jury. The State retried defendant and he was convicted.

representation by counsel and he refused, stating that he was more confident in speaking in his own defense than having another man fight for him.

On August 24, again before Judge Morse, just prior to the commencement of jury selection, defendant requested standby counsel. The trial court refused this "eleventh hour" request. The court first detailed the problems inherent in such a hybrid representation as set forth by the United States Supreme Court in *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). According to the court, defendant's case was relatively factually simple and defendant possessed broad experience and, therefore, it was the court's belief that the appointment of standby counsel would only muddy the waters and would not be appropriate. The court stated that it had weighed the factors set forth in *Williams* and declined to appoint standby counsel.

At the hearing on defendant's motion for a new trial, where defendant argued that the trial court erred in not appointing standby counsel, the court stated that it had warned defendant numerous times that it was ill-advised to appear *pro se*. The court noted that defendant had been very confident in his ability to try the case. Additionally, the court pointed out that defendant had more trial experience than many rookie assistant State's Attorneys. According to the court, there was nothing conceptually difficult about the case, defendant was told standby counsel would not be appointed, and defendant did not need standby counsel.

Initially, we note that defendant does not argue that the trial court abused its discretion based on the pertinent factors the trial court is required to consider under *Gibson* and *Williams*; rather, he argues that the trial court abused its discretion based on its comments that appointment of standby counsel was unwise, it may result in an unfair trial, and that defendants tend to argue ineffective assistance of counsel on appeal. However, these were not the trial court's bases for denying defendant's request for standby counsel. The trial court was simply outlining the concerns and perils with appointment of standby counsel as set forth by the United States Supreme Court. These problems were detailed again in *Williams*, where the court clearly set forth the fact that there are particular concerns in appointing standby counsel and, generally, it is not the prudent course of conduct. *Williams*, 277 Ill. App. 3d at 1061. The *Williams* court further noted that "*no* trial court in Illinois has been reversed for exercising its discretion to *not* appoint standby counsel, and this absence of reversals appears consistent with nationwide experience." (Emphasis in original.) *Williams*, 277 Ill. App. 3d at 1061. Similarly, this issue rarely arises on

appeal. *Williams*, 277 Ill. App. 3d at 1061. In conclusion, the *Williams* court stated, "In our judgment, consistent with the views expressed by the supreme court in *Gibson*, the trial court's prudent course in most cases is not to appoint standby counsel, even if the *pro se* defendant specifically requests that appointment." *Williams*, 277 Ill. App. 3d at 1061.

The above case law emphasizes the problems with appointment of standby counsel and confirms that the trial court's comments here to defendant were proper. Moreover, on August 24, when the trial court denied defendant's request to appoint standby counsel, the court specifically stated that it had weighed the *Williams* factors and would not appoint standby counsel based on those factors. Accordingly, defendant's argument that the above three comments by the trial court were the trial court's bases for its denial of appointment of standby counsel has no merit. The trial court properly and wisely made such comments to defendant.

■ In any event, substantively, we find that the trial court did not abuse its discretion. Defendant was admonished on at least four occasions by three different judges prior to his trial as to the adverse consequences of representing himself and that standby counsel would not be appointed. Clearly, he was aware of the trial court's position on this matter. With respect to the nature and gravity of the charges, while it is true that the charges were serious, as were the sentencing consequences, defendant's case did not involve the same gravity as would a capital case. Defendant was subject to a maximum term of 30 years' imprisonment. Similarly, with respect to the factual and legal complexity, although fingerprint, footprint, and glass identification testimony was offered, the testimony and issues were not particularly complex and the balance of the issues at trial were relatively simple. Lastly, with respect to defendant's abilities and experience, clearly defendant had represented himself in three prior cases, and in one obtained an acquittal. In the two cases in which he was ultimately convicted following a mistrial and a hung jury, one involved a burglary/theft charge and the other an aggravated possession of a motor vehicle charge. As a result, defendant had experience with the exact type of charges he was on trial for in the instant case. Based on these factors, we find that the trial court did not abuse its discretion in denying defendant's request for appointment of standby counsel.

## II. Appearance in Prison Clothing

Defendant next contends that he was denied his right to a fair trial because he was forced to wear prison clothing during the trial. According to him, the relevant question is whether a reasonable juror

would likely recognize a part of a defendant's attire as being prison clothing. Defendant maintains that in the instant case, the trial court's observations confirmed the fact that jurors could readily identify defendant's pants and shoes as prison clothing.[2] Defendant argues that because he was representing himself, he was required to stand and, therefore, the jury would have been able to observe the prison identification markings on his clothing. Defendant further argues that a harmless error analysis does not apply because he was denied a fundamental right.

The State responds that prison clothing is not inherently prejudicial. It further maintains that, in the instant case, defendant's clothing was suitable because the jury could not see any of the markings on the clothing. Additionally, the State contends that if any error occurred, it was harmless because the error did not contribute to defendant's conviction in light of the overwhelming evidence against him.

■ Under *Estelle v. Williams*, 425 U.S. 501, 504-05, 48 L. Ed. 2d 126, 130-31, 96 S. Ct. 1691, 1693 (1976), "the State cannot compel a defendant to stand trial before a jury while dressed in identifiable prison clothing." *People v. Wilder*, 325 Ill. App. 3d 987, 996, 760 N.E.2d 496 (2001). "However, the right not to be tried in jail clothing is, like many other rights of criminal defendants, subject to harmless-error analysis." *People v. Steinmetz*, 287 Ill. App. 3d 1, 6-7, 678 N.E.2d 89 (1997), citing *Estelle*, 425 U.S. at 506, 48 L. Ed. 2d at 131-32, 96 S. Ct. at 1694. See also *People v. Medley*, 111 Ill. App. 3d 444, 448, 444 N.E.2d 269 (1983) (finding that even if it was error to require the defendant to appear in prison clothing, the error was harmless); *People v. Wilkes*, 108 Ill. App. 3d 460, 467-68, 438 N.E.2d 1385 (1982) (finding that requiring the defendant to wear an orange jail uniform was harmless error).[3] In determining whether requiring a defendant to wear identifiable prison clothing constitutes harmless error, three approaches are applicable:

"‘(1) Focusing on the error to determine whether it might have contributed to the conviction [citation]; (2) Examining the other evidence in the case to see if overwhelming evidence supports the conviction [citation]; (3) Determining whether the error is merely cumulative or duplicates properly admitted evidence [citations].' "

---

[2]Apparently, defendant is referring to the trial court's comment that it did not think there was a problem with a jury knowing that someone was in custody.

[3]Clearly, contrary to defendant's argument, a harmless error analysis is applicable to the wearing of prison clothing.

*Wilkes*, 108 Ill. App. 3d at 467, quoting *People v. Collins*, 85 Ill. App. 3d 1056, 1060 (1980). See also *Medley*, 111 Ill. App. 3d at 448. Each approach need not be applied or satisfied. See *Wilkes*, 108 Ill. App. 3d at 467 (applying only the first and third approaches).

■ In the instant case, defendant must first demonstrate that the clothing he was wearing was "identifiable prison clothing." Although he relies on the trial court's comment, we do not find this comment determinative. The comment does not demonstrate, with certainty, that the clothing was in fact identifiable as prison attire. The comment merely sets forth the trial court's opinion that, assuming defendant's clothes were identifiable as prison clothing, there was no problem with the jury seeing them. Moreover, the court specifically stated that defendant's pants looked like Dockers. These are common men's pants worn every day. Clearly, if the pants looked liked Dockers to the trial court, the court would not be under the belief, at the same time, that the pants were identifiable prison clothing. Thus, the trial court's comment does not support defendant's argument.

While there were no photographs taken of defendant's attire to aid us in reviewing this issue (*United States v. Forrest*, 623 F.2d 1107, 1116 (5th Cir. 1980) (trial court ordered a photograph of the defendant upon his objection to wearing prison clothing before the jury to facilitate review)), it would not appear that defendant's pants or heelless shoes would identify defendant's outfit as prison issued. See *Medley*, 111 Ill. App. 3d at 448 (it was not error for the trial judge to require the defendant to appear before the jury in jail-issued clothes consisting of pale green pants and a pullover shirt similar to "scrubs" because there was nothing to identify the outfit as jail issued). Moreover, it does not appear that the type of clothing worn by defendant was clothing unique to prisons, particularly given the fact that defendant was wearing a dress shirt, a tie, and a jacket. See *People v. Partee*, 157 Ill. App. 3d 231, 254-55, 511 N.E.2d 1165 (1987) (prison issued jogging suit could not be considered identifiable jail clothing—"It is not clothing unique to prison institutions" and, therefore, the defendant could not demonstrate it was "identifiable prison clothing"). Additionally, there were no markings on the inside out pants to identify them as prison clothing. See *Wilkes*, 108 Ill. App. 3d at 467 (trial court erred in permitting the defendant to appear before the jury dressed in bright orange coveralls with the word "Jail" stenciled across the back).

Although defendant's attire may have been a bit unusual, there is no evidence that the jury saw his attire as prison clothing, nor is there any evidence that defendant's attire adversely affected the jury. We

therefore find that defendant was not denied his right to a fair trial because he was required to appear in khaki-colored pants turned inside out and with heelless shoes. See also *Forrest*, 623 F.2d at 1116 (finding there was no error in requiring the defendant to appear before the jury in khaki pants with a four-digit black laundry mark stenciled twice on the seat of the pants; the court noted that "it [was] extremely unlikely that the laundry numbers, even assuming they were noticed by the jurors, would have identified the otherwise plain khaki pants as prison clothing" and noting that it was "confident that appellant's dress did not 'badge him as a criminal in the jury's eyes, as in the case with prison uniforms.' [Citation.]"); *United States v. Dawson*, 563 F.2d 149, 150 n.2 (5th Cir. 1977) (finding that plain khaki clothing worn by the defendant did not mark him as a prisoner; khaki shirt and pants "did not appear to be the usual prison garb"); *Wright v. Texas*, 415 F. Supp. 5, 7 (E.D. Tex. 1975) (finding that blue overalls worn by the defendant, although clearly distinguishing him from every one else in the courtroom, were not the type of clothes "typical of and recognizable as 'jail clothes' "); *Klingler v. Erickson*, 328 F. Supp. 674, 676 (S.D. S.D. 1971) (finding that the defendant failed to demonstrate that any of the jurors knew he was in fact in prison clothing where the defendant was wearing a prison-issued gray shirt, gray jacket and gray pants, and also finding that there was no evidence that the jury was adversely affected by the defendant's attire). Even assuming there was error here, we conclude that it was harmless. There is no evidence that defendant's attire contributed to his conviction. Moreover, the evidence of defendant's guilt was overwhelming.

### III. Appeal Admonishments

Defendant lastly contends that the trial court's failure to admonish him of the need to file a motion attacking his sentence in order to preserve sentencing errors for appeal violated his due process rights. According to defendant, the admonishments he was given mirrored those set forth in Supreme Court Rule 605(a) (145 Ill. 2d R. 605(a)), which defendant contends violate due process because section 5—8—1(c) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—1(c) (West 1998)) mandates that a defendant file a motion attacking his sentence in order to preserve any sentencing errors for review. In the instant case, as defendant argues, he was given incorrect information by the trial court. He was only advised to file a notice of appeal—he was not advised of the need to file a motion attacking his sentence to preserve any sentencing challenges for appeal. Defendant analogizes this error to a trial court's failure to properly admonish a defendant in guilty plea situations under Supreme Court Rules 604(d) and 605(b).

Defendant argues that it is procedurally unfair to misinform a defendant on how to perfect an appeal. Defendant also asserts that Rule 605(a) is unfair and denies due process. Defendant asks that we remand his case to allow him to file a motion to reconsider his sentence.

The State contends that *People v. Little*, 318 Ill. App. 3d 75, 743 N.E.2d 594 (2001), is controlling on this issue where the court held that the same admonishments given in the instant case were proper.

In response, defendant argues that there is a distinction between the situation in *Little*, involving "silence," and the situation here, involving misinformation. According to defendant, Rule 605(a) affirmatively requires the trial court to give defendants erroneous advice in violation of due process.

At the time of defendant's sentencing, Rule 605(a) provided:

"In all cases in which the defendant is found guilty and sentenced to imprisonment ***, except in cases in which the judgment and sentence are entered on a plea of guilty, the trial court shall, at the time of imposing sentence ***, advise the defendant of his right to appeal, of his right to request the clerk to prepare and file a notice of appeal, and of his right, if indigent, to be furnished, without cost to him, with a transcript of the proceedings at his trial or hearing, and, in cases in which the defendant has been convicted of a felony or a Class A misdemeanor or convicted of a lesser offense and sentenced to imprisonment ***, of his right to have counsel appointed on appeal. The trial court shall also advise him that his right to appeal will be preserved only if a notice of appeal is filed in the trial court within 30 days from the date of the sentence." 145 Ill. 2d R. 605(a).[4]

Section 5—8—1(c) of the Code provides:

"A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence." 730 ILCS 5/5—8—1(c) (West 1998).

---

[4]This rule has subsequently undergone a major amendment, presumably in response to the numerous appellate court decisions seeking guidance from the supreme court. See, *e.g.*, *People v. Corrie*, 294 Ill. App. 3d 496, 508, 690 N.E.2d 128 (1998) (suggesting that the supreme court amend Rule 605(a) to require an admonishment that a defendant must file a postsentencing motion to preserve for appeal any contentions of error at sentencing). The rule now provides for such admonishments in conformity with section 5—8—1(c) of the Code, as set forth more fully below.

   The Second District Appellate Court, in *Little*, addressed the precise argument defendant raises in the instant case—that Rule 605(a) denies a defendant due process because it fails to inform a defendant of the need to file a postsentencing motion to preserve any sentencing challenges as required by section 5—8—1(c). *Little*, 318 Ill. App. 3d at 77-78. The *Little* court first set forth the requirements of Rule 605(a), exactly as detailed above, noting that nothing in the rule required a trial court to advise a defendant of the requirements of section 5—8—1(c). *Little*, 318 Ill. App. 3d at 78-79. The court then noted that the defendant relied upon cases involving guilty pleas and Rule 605(b) in support of his argument that fundamental fairness required a remand. *Little*, 318 Ill. App. 3d at 79. The *Little* court rejected the defendant's suggestion to create an "admonishment exception" to the waiver rule for defendants who were not admonished with respect to section 5—8—1(c)'s requirements, as is made in guilty plea cases, stating:

> "We conclude that such an exception is unnecessary. In this case, defendant was neither told that a written postsentencing motion was unnecessary nor misled about which type of motion was required. The trial court fully complied with Rule 605(a) and did not mention the motion requirement only because it is not included in the rule.
>    When the language of a supreme court rule is plain and unambiguous, courts should not read into the rule exceptions, limitations, or other conditions. [Citation.] Because the plain language of Rule 605(a) does not require a trial court to advise the defendant of the written motion requirement of section 5—8—1(c), we will not read into the rule that additional condition." *Little*, 318 Ill. App. 3d at 79-80.

See also *People v. Bailey*, 311 Ill. App. 3d 265, 270, 724 N.E.2d 1032 (2000) (stating that "[a]lthough it is true that the trial court did not admonish the defendant of his obligation to file a postsentencing motion in order to preserve all sentencing issues for appeal, the trial court was not obligated to provide such an admonishment under Supreme Court Rule 605"); *People v. Kyles*, 303 Ill. App. 3d 338, 353-54, 708 N.E.2d 391 (1998) (finding that "there is no duty upon the court or the prosecutor to advise the defendant of the requirement to file a posttrial or postsentencing motion to preserve errors for appeal. While the trial court has such a duty when entering judgment on a defendant's plea of guilty (145 Ill. 2d R. 605(b)), no such duty exists when judgment and sentence are entered after the defendant has pled not guilty. In the latter case, the court need only advise the defendant of his rights regarding the taking of an appeal").

Clearly, these cases are directly on point and refute defendant's contention in the instant case. Moreover, there is no evidence that the factual situation in *Little* is any different than the factual situation here. Both defendants were admonished pursuant to Rule 605(a). Thus, defendant's attempt to distinguish *Little* is unpersuasive.

However, the instant case raises an additional issue because, as noted above, Rule 605(a) has been amended. Effective October 1, 2001, Rule 605(a) requires the trial court to admonish a defendant as follows:

"(1) In all cases in which the defendant is found guilty and sentenced to imprisonment, probation or conditional discharge, periodic imprisonment, or to pay a fine, or in which a sentence of probation or conditional discharge has been revoked or the conditions attached to such a sentence have been modified, excluding cases in which the judgment and sentence are entered on a plea of guilty, the trial court shall, at the time of imposing sentence or modifying the conditions of the sentence, advise the defendant of the right to appeal, of the right to request the clerk to prepare and file a notice of appeal, and of the right, if indigent, to be furnished, without cost to the defendant, with a transcript of the proceedings at the trial or hearing.

(2) In addition to the foregoing rights, in cases in which the defendant has been convicted of a felony or a Class A misdemeanor or convicted of a lesser offense and sentenced to imprisonment, periodic imprisonment, or to probation or conditional discharge conditioned upon periodic imprisonment, or in which a sentence of probation or conditional discharge has been revoked or the conditions attached to such a sentence have been modified and a sentence or condition of imprisonment or periodic imprisonment imposed, the trial court shall advise the defendant of the right to have counsel appointed on appeal.

(3) At the time of imposing sentence or modifying the conditions of the sentence, the trial court shall also advise the defendant as follows:

A. that the right to appeal the judgment of conviction, excluding the sentence imposed or modified, will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed;

B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing,

setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;

C. that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived; and

D. that in order to preserve the right to appeal following the disposition of the motion to reconsider sentence, or any challenges regarding the sentencing hearing, the defendant must file a notice of appeal in the trial court within 30 days from the entry of the order disposing of the defendant's motion to reconsider sentence or order disposing of any challenges to the sentencing hearing." Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001.

Based on our supreme court's rulings in guilty plea cases, we believe a remand of this cause is proper in the instant case. Instructive on this point is the Fourth District case of *People v. Leahy*, 322 Ill. App. 3d 974, 751 N.E.2d 634 (2001). In *Leahy*, the defendant entered into a negotiated guilty plea that included a recommended sentence cap of 3½ years' imprisonment. *Leahy*, 322 Ill. App. 3d at 974. On January 17, 1999, the defendant was sentenced to 3½ years' imprisonment and, at this time, the trial court admonished him in conformity with Rule 605(b) "as it then existed." *Leahy*, 322 Ill. App. 3d at 974. Specifically, "[t]he trial court advised the defendant that to perfect an appeal, he could file either a motion to withdraw his plea or a motion to reconsider his sentence." *Leahy*, 322 Ill. App. 3d at 974. Thereafter, the defendant filed a motion to reconsider sentence, which the trial court denied. *Leahy*, 322 Ill. App. 3d at 974. The *Leahy* court further noted that on November 1, 2000, Rule 605(b) was amended to provide two distinct forms of admonishments. For those individuals who had negotiated some aspect of their sentencing, the proper admonishment was that the only way to perfect an appeal was to seek withdrawal of the guilty plea first (as would be required in *Leahy*). *Leahy*, 322 Ill. App. 3d at 975. For those defendants who had not negotiated any aspect of their sentencing, they could file either a motion to withdraw the guilty plea or a motion to reconsider sentence to perfect their appeal. *Leahy*, 322 Ill. App. 3d at 975. The *Leahy* court also noted that in between the various supreme court decisions on guilty pleas and the proper admonishments required and the amendment of Rule 605(b), many defendants had received incorrect advice, as in the case before the *Leahy* court. *Leahy*, 322 Ill. App. 3d at 975. In all but the Fourth District, the courts had held that under those circumstances, "fundamental fairness required that such cases be remanded to the trial court for proper advice and the opportunity to move to withdraw

the plea, if defendants so chose." *Leahy*, 322 Ill. App. 3d at 975. The Fourth District, however, had previously held to the contrary. *Leahy*, 322 Ill. App. 3d at 976, citing *People v. Jogi*, 308 Ill. App. 3d 302, 719 N.E.2d 798 (1999).

The *Leahy* court further noted that the supreme court, on October 4, 2000, in a supervisory order, vacated *Jogi* and advised the appellate court to reconsider its decision in light of *People v. Diaz*, 192 Ill. 2d 211, 735 N.E.2d 605 (2000) (case in which the supreme court for the first time addressed the disparity between Rule 605(b) and case law), and also ordered the Fourth District to reconsider other similar cases. *Leahy*, 322 Ill. App. 3d at 976. On remand, the Fourth District again affirmed the trial court in *Jogi*, finding that *Diaz* was distinguishable since the relevant case law on negotiated guilty pleas had been available to the defendant in *Jogi*, whereas the relevant case law had not been available to the defendant in *Diaz*. *Leahy*, 322 Ill. App. 3d at 976. The supreme court again allowed leave to appeal in *Jogi* and vacated the second appellate court decision, remanding the case directly to the trial court, with directions that the trial court allow the defendant to file a motion to withdraw his guilty plea. *Leahy*, 322 Ill. App. 3d at 976-77. The *Leahy* court, based on the supreme court's second supervisory order, found that fundamental fairness required remands in all similar cases. Accordingly, the *Leahy* court remanded the case before it to the trial court, with directions that the trial court admonish the defendant in conformity with the present version of Rule 605(b) and allow him an opportunity to withdraw his guilty plea. *Leahy*, 322 Ill. App. 3d at 977.

■ Thus, in *Leahy*, the supreme court rule in effect at the time of the *Leahy* defendant's direct appeal was the appropriate admonishment that the defendant was to receive despite the fact that the admonishment was not in place at the time of the defendant's sentencing. Although the law with respect to negotiated and nonnegotiated guilty pleas and what constitutes a negotiated guilty plea was clearly in turmoil, and although Rule 605(b) was unclear and Rule 605(a) was clear, the general equitable principles are nonetheless the same. Here, defendant was misinformed because the supreme court rule failed to include all the admonishments necessary for a defendant to preserve issues for appeal. Defendant therefore lost the right to appeal his sentence challenges. The supreme court has subsequently amended Rule 605(a) and now mandates admonishments with respect to post-sentencing motions. Fundamental fairness therefore requires that defendant be allowed a remand for proper admonishments pursuant to the current version of Rule 605(a) and in order to file a motion to reconsider sentence.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County, but remand this cause with directions.

Affirmed and remanded, with directions.

GORDON and McBRIDE, JJ., concur.